SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

| | |
|---|---|
| DOCKLIGHT BRANDS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>TILRAY, INC. and HIGH PARK HOLDINGS, LTD.,<br><br>Defendants. | NO. 21-2-14734-4 SEA<br><br>AMENDED COMPLAINT FOR DAMAGES AND SPECIFIC PERFORMANCE |

### I. INTRODUCTION AND OVERVIEW OF CLAIMS

1.1.   Defendant Tilray, Inc. ("Tilray") has caused its wholly-owned subsidiary Defendant High Park Holdings Ltd. ("High Park") to breach its license agreement with Plaintiff Docklight Brands, Inc. ("Docklight") to produce, market, sell, and distribute Bob Marley-branded cannabis products in Canada.  Tilray induced Docklight to waive its termination right in connection with Tilray's then-pending merger with Aphria, Inc. ("Aphria") with promises of a continued and long-term commitment to the Marley brand.  Once the merger was complete, Tilray and High Park reneged on those promises, refusing to pay undisputed amounts owed, refusing to provide required books and records, and ignoring repeated inquiries on the matter.

1.2. Defendants' wrongful conduct has caused substantial harm to Docklight, in the form of royalties Defendants guaranteed but have failed to pay, additional royalties expected but lost by virtue of Defendants' failure to make reasonable efforts to perform under the license, and irreparable harm to the Bob Marley brand, which harms not only Docklight but also the Estate of Bob Marley.

1.3. By this action Docklight seeks a judgment for damages and attorney's fees arising from Defendants' breach of contract and negligent misrepresentations, and for specific performance of certain of High Park's contractual obligations.

## II. PARTIES

2.1. Plaintiff Docklight Brands, Inc. ("Docklight") is a leader in the development of premium cannabis-related consumer goods. Headquartered in Seattle and formed under the laws of the State of Delaware, Docklight develops products sold under brands affiliated with the late musician, songwriter, and activist Bob Marley, under an intellectual property license granted to it by Marley Green LLC, which is owned by the Estate of Bob Marley (the "Marley License").

2.2. Defendant Tilray Inc. ("Tilray") is a producer and distributor of cannabis-related products. It is a corporation organized under the laws of the State of Delaware with its principal office in Seattle, Washington.

2.3. Defendant High Park Holdings Ltd. ("High Park") is a wholly-owned subsidiary of Tilray. On information and belief, it is a Canadian limited liability company headquartered in Toronto, Ontario.

## III. JURISDICTION AND VENUE

3.1. This Court has original subject matter jurisdiction under Article IV, Section 6 of the Washington Constitution and RCW 2.08.010.

AMENDED COMPLAINT FOR DAMAGES AND SPECIFIC PERFORMANCE - 2

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

3.2. This Court has personal jurisdiction over High Park because High Park expressly consented to the exclusive jurisdiction of the courts in King County, Washington, for disputes arising from the High Park License.

3.3. This Court has personal jurisdiction over Tilray, because Tilray has its principal office in Seattle, Washington and purposefully directed its activity toward Docklight in Seattle by virtue of contract negotiations with Docklight, and Docklight's claims arise directly out of those contacts.

3.4. Venue is proper because: (a) in the High Park License, High Park expressly consented to venue in the courts located in King County, Washington; (b) High Park and Tilray transacted business in King County at the time this dispute arose; and (c) High Park negotiated and entered into the High Park License with Docklight in King County.

## IV.  FACTUAL ALLEGATIONS

**A.  The Marley License**

4.1. Robert Nesta Marley, better known as Bob Marley, is a cultural icon whose global appeal endures to this day as a result of his extraordinary songwriting, evocative performances, and his passion for social justice.  There is perhaps no celebrity, dead or alive, more closely associated with the use and advocacy of cannabis for wellness purposes.

4.2. Privateer Holdings, Inc. ("Privateer") was a pioneering investment group founded in Seattle in 2010 with the goal of building a portfolio of global brands for cannabis-related products.

4.3. Privateer formed Lafitte Ventures d/b/a Tilray in 2013, later folding Lafitte into the newly formed Tilray, Inc.  Lafitte was Tilray's sole shareholder until February 2018.

4.4. In 2014, Privateer and the Estate of Bob Marley entered into a letter of intent that granted Privateer exclusive rights to utilize the Bob Marley name, likeness, and other Marley-related intellectual property in the commercialization of cannabis-related products, including the right to sub-license such rights.

4.5. In 2015, Privateer founded Privateer Brands, LLC, which changed its name to Docklight, LLC in 2017, and was converted into Docklight Brands, Inc. in January 2019. Privateer was Docklight's sole shareholder until February 2019.

4.6. In 2016, Docklight and Marley Green LLC entered into the Marley License, which replaced the 2014 letter of intent and under which Docklight obtained the rights to use the Marley brand in the development, sale, and licensing of cannabis-related products. In exchange, Docklight agreed to pay royalties to the Marley Green, including guaranteed minimum royalties.

4.7. The Marley License remains in effect to this day.

**B.     The High Park License**

4.1. In February 2018, Docklight entered into a license agreement with Tilray's wholly-owned subsidiary, High Park, for the exclusive right and obligation to manufacture, advertise, distribute, and sell certain Marley-branded cannabis products in Canada. The licensing agreement, and the revenues Docklight expected from it, were and remain central to Docklight's efforts to fulfill its obligations under the Marley License.

4.2. In December 2018, Docklight and High Park entered into a superseding license agreement—the High Park License—that remains in effect today and forms the basis for Docklight's claims.

4.3. The High Park License obligates High Park to:

4.3.1. "[M]arket, advertise, promote and sell the [Marley-branded] Products to Customers . . . consistent with good business practice, in each case using commercially reasonable efforts to maximize sales of the [Marley-branded] Products";

4.3.2. "[E]stablish and maintain a sales and marketing organization sufficient to develop to the satisfaction of Licensor the market potential for the sale of the [Marley-branded] Products, independent sales representatives and a distribution organization and facilities sufficient to make the [Marley-branded] Products available to meet demand";

4.3.3. "[D]evelop and execute a marketing plan in concert with Licensor sufficient to fulfill its obligations under this Agreement . . .";

4.3.4. "[U]se commercially reasonable efforts during the License Period to (a) manufacture the [Marley-branded] Products; (b) distribute and sell the [Marley-branded] Products; and (c) engage in Advertising and Promotion (as defined below) in the Licensed Territory";

4.3.5. "Upon Licensor's written request and within fifteen (15) days following Licensor's written request . . . furnish to Licensor complete and accurate written statements identifying each Reseller, the number of [Marley-branded] Products sold itemized by product and retail location, gross sales prices, itemized deductions from gross sales prices . . . and Net Sales of the [Marley-branded] Products, by month preceding the date of such report . . ."; and

4.3.6. Allow Docklight "to examine and copy all books and other records of the Licensee relating the [Marley-branded] Products and the subject matter of this Agreement during the License Period and for a period of two (2) years thereafter."

4.3.7. Refrain from disclosing the terms and conditions of the High Park License to third parties.

4.4. High Park is in breach of every one of these obligations.

**C. The 2019 Corporate Reorganization**

4.5. In February 2019, Docklight spun off from Privateer and became an independent corporation.

4.6. In December 2019, Privateer merged with and into Tilray, with Tilray as the surviving entity.

4.7. On information and belief, as part of the due diligence effort relating to that December 2019 merger, a Tilray special committee comprised of independent directors reviewed and approved every material commercial agreement between Tilray and any of the former affiliated companies, including the High Park License.

**D. The First Dispute Over High Park's Failure of Performance**

4.8. In May 2020, a dispute developed over High Park's failure to make reasonable efforts to manufacture, distribute, advertise, and sell Marley-branded products under the High Park License.

4.9. In December 2020, the parties settled the dispute. In connection with the settlement agreement, the High Park License was amended to, among other things: (1) obligate High Park to make minimum guaranteed royalty payments to Docklight, regardless of sales, in the total amount of $10,000,000 Canadian (roughly $8,000,000 U.S.) in equal quarterly installments from January 2021 through December 2024; and (2) allow High Park to terminate the High Park License for convenience, in exchange for its payment to Docklight of $1.5 million Canadian for that right. These terms were reflected in an Amendment to the High Park License.

4.10. The duties imposed on High Park, as set forth at ¶ 4.3 above, remained the same under the amended agreement.

AMENDED COMPLAINT FOR DAMAGES AND SPECIFIC PERFORMANCE - 6

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

### E. Tilray's Merger with Aphria

4.11. Shortly after the parties' settlement in December 2020, Tilray announced it was in discussions to merge with Aphria, Inc., another licensed producer of cannabis products in Canada that competed with Tilray.

4.12. The High Park License includes a provision allowing Docklight to terminate the High Park License in the event of a change of control at Tilray.

4.13. The Tilray-Aphria merger constituted a change of control at Tilray.

4.14. In late March, Tilray requested that Docklight waive its right to terminate as a result of the pending change of control at Tilray.

4.15. Docklight was concerned that the management team of the combined Tilray-Aphria company would not be committed to fulfilling High Park's obligations under the High Park License, especially if the surviving entity was managed by Aphria's managers rather than Tilray's. Docklight expressed these concerns to Tilray, and considered whether it was prudent to exercise its termination right and find another partner to replace High Park.

4.16. Tilray and Aphria repeatedly assured Docklight that they were committed to continuing, post-merger, to commercialize Marley-branded products in Canada under the terms of the High Park License. As part of those assurances, on April 1, 2021, a video conference was held among the management teams of Docklight, Tilray, and Aphria. Leading that call was Aphria CEO Irwin Simon, who was slated to become CEO of the combined Tilray-Aphria entity. During this call, the parties discussed the role of the Marley brand in the Tilray-Aphria portfolio going forward, and Mr. Simon repeatedly emphasized the importance of brands in the Canadian cannabis markets and his support of the Marley brand, including the statement, "We very much want to continue Marley in Canada." In addition, Mr. Simon expressly requested that Docklight

waive its right to terminate the High Park License so that the Marley brand would remain in the combined entity's portfolio after the merger.

4.17. Docklight accepted these assurances and, in reliance thereon, waived its termination right, and accordingly, its right to find a substitute partner for the lucrative Canadian market.

4.18. In connection with Docklight's waiver of the termination right, Tilray agreed to surrender its right to terminate for convenience, while allowing Docklight to retain the $1.5 million Canadian fee that it had paid for that right. This agreement was reflected in a Second Amendment to the High Park License.

4.19. Both Tilray's General Counsel and Aphria's General Counsel were involved in the negotiation and drafting of the Second Amendment to the High Park License.

4.20. The Tilray-Aphria merger was completed in May 2021, with Tilray acquiring all of the outstanding equity of Aphria. The rights and obligations under the High Park License remained in full force and effect, and fully binding on Tilray.

**F.     High Park's Breach of the High Park License**

4.21. Prior to the merger, High Park timely made its first two minimum quarterly royalty payments to Docklight, in January and April 2021.

4.22. Notwithstanding its prior assurances of commitment to perform under the High Park License, High Park's actions following the merger with Aphria betrayed contrary intentions.

4.23. High Park was 19 days late making its July 2021 payment. In attempting to explain the delay, it wrote that "There was a delay in approving this payment as Tilray's new top management was familiarizing itself with the long term agreements that legacy Tilray has,

AMENDED COMPLAINT FOR DAMAGES AND SPECIFIC PERFORMANCE - 8

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

including the one that Tilray has with Docklight." Tilray's excuse was a pretext. Two months earlier Tilray's "top management" (the very same people) had already reviewed the High Park License as part of the merger-related due diligence process.

4.24. In July 2021, Tilray Chief Operating Officer Jim Meiers requested a call with Docklight, where he informed members of Docklight management that Tilray would "walk away" from its obligations under the High Park License unless it received certain unspecified concessions. When pressed for data to support the request of concessions, Tilray did not provide any. Mr. Meiers was further unable to explain why Tilray had recently discontinued a number of popular Marley products. He claimed that the High Park License was "too expensive," despite previously strong sales of the Marley products, the company's publicly reported cash on hand of approximately $376 million, and the company's recent award of cash compensation in the extraordinary amount of approximately $13 million to CEO Irwin Simon, who has publicly proclaimed that Tilray will generate $4 billion in revenue by 2024.

4.25. High Park failed to make the October 2021 royalty payment and is now more than 30 days late.

4.26. Notwithstanding its failure to make required royalty payments, High Park continues to use the Marley intellectual property in the distribution and sale of Marley-branded products.

4.27. Further, High Park has breached and continues to breach its obligation under the High Park License to use commercially reasonable efforts to maximize sales of Marley-branded products in Canada. This includes without limitation:

- failing to develop marketing plans;

AMENDED COMPLAINT FOR DAMAGES AND SPECIFIC
PERFORMANCE - 9

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

- cancelling or abandoning planned marketing campaigns without notice or explanation;

- discontinuing entire categories of Marley products without notice or explanation;

- failing to develop new or updated products or product plans;

- failing to maintain an adequate salesforce; and

- intentionally omitting Marley from press releases and marketing materials.

4.28. On October 21, 2021, Docklight made a written request to Tilray for monthly sales statements for July, August, and September 2021. Tilray neither acknowledged the request nor produced the records.

4.29. On October 27, 2021, Docklight made a written demand to Tilray to open its books and records to inspection by Docklight on or before November 4, 2021. Tilray again ignored Docklight's request.

4.30. An October 2021 press release from Tilray regarding a new distribution deal cites each of Tilray's brands but omits any mention of the Marley-branded products it is obligated to manufacture, distribute, promote, and sell.

4.31. When confronted by Docklight over its material breaches, High Park has ignored Docklight's outreach and refused to discuss the matter, citing the same pretext noted above—a need to "review the contract"—and offering vague excuses about supposedly depressed sales of Marley-branded products. High Park has further suggested that the negotiations leading to the High Park License may not have been at arm's length.

4.32. High Park's stated excuses are unavailing. First, when pressed to provide sales and market information to support its claim regarding flagging sales, High Park offered nothing of substance. Indeed, High Park has separately breached its express obligation under the High

Park License to permit Docklight to inspect its books and records pertaining to its performance under that contract. Second, at the time the High Park License was negotiated and subsequently amended, it was indisputably done so at arm's length. Third, Tilray entered the High Park License aware of the royalty obligation it imposed, and it represented that it had the expertise and experience to evaluate the retail market for cannabis-related products in Canada. Fourth, Aphria and its management team entered into the merger with Tilray, and gave Docklight assurances of its commitment to the High Park License, fully aware of the rights and obligations imposed by that agreement and familiar with the Canadian market to which it pertained.

4.33. In addition to the material breaches set forth above, High Park has breached the High Park License by publicly disclosing the terms and conditions of that agreement. Specifically, in multiple public filings with the Securities and Exchange Commission ("SEC") beginning in June 2018, Tilray described the terms and appended unredacted copies of the High Park License, which included sensitive information such as the royalty rates Docklight agreed to accept from High Park.

### G. The Harm Resulting from Defendants' Breaches and Misrepresentations

4.34. To date, Docklight has been damaged by High Park's and Tilray's breach and misrepresentations in a bare minimum amount of $625,000 Canadian, plus interest, by virtue of High Park's refusal to make its October 2021 guaranteed royalty payment. Assuming Tilray and High Park continue in their non-performance, the minimum damage to Docklight will double in January 2021 and will approach $9 million Canadian by the expiration of the High Park License.

4.35. Notwithstanding Defendants' unexcused failure to make their minimum payment to Docklight, Docklight remains obligated to pay—and has continued to pay—its minimum royalties to Marley Green under the Marley License.

4.36. The damage from Defendants' misconduct reaches beyond the minimum royalties High Park is obligated to pay. Market data demonstrates that sales of cannabis-related consumer products in Canada continue to surge. Tilray itself recently announced its gross profit and net revenues increased by 46% and 43%, respectively, during the quarter ending August 31, 2021. Defendants' wrongful conduct has caused Docklight to irretrievably lose a critical opportunity to exploit the massive Canadian market for cannabis-related consumer goods by increasing sales and establishing the Marley brand in that market. These lost opportunities have harmed Docklight. They also have inflicted financial and reputational harm on the Marley brand.

4.37. The damage to Docklight from High Park's flagrant breach of its confidentiality obligations remains to be determined, but is expected to be substantial.

## V.  CAUSES OF ACTION

### First Cause of Action – Breach of Contract
### (Against Defendant High Park)

5.1. Docklight incorporates the allegations set forth at ¶¶ 1.1 – 4.37 above.

5.2. Under the High Park License, High Park owes Docklight duties with respect to the manufacture, distribution, promotion, and sales of Marley-branded products so as to maximize the sales of those products in Canada.

5.3. Under the High Park License, High Park owes Docklight a duty to make minimum quarterly payments beginning in January 2021 and continuing through December 2024.

5.4. Under the High Park License, High Park owes Docklight a duty to provide monthly sales statements and to allow Docklight to inspect the books and records of High Park.

5.5. Under the High Park License, High Park owes Docklight a duty of good faith and fair dealing, which obligated High Park to cooperate with Docklight so that both parties may obtain the full benefit of performance, to remain faithful to an agreed common purpose, and to behave in a manner consistent with Docklight's justified expectations.

5.6. Under the High Park License, High Park had a duty to refrain from disclosing the terms of the license to third parties.

5.7. Docklight has faithfully discharged its express and implied duties under the High Park License and has fulfilled any conditions to High Park's performance.

5.8. As set forth above, High Park has materially breached its express and implied obligations under the High Park License.

5.9. Docklight has been damaged by High Park's material breaches, in an amount to be determined at trial but which will include expectation damages for High Park's failure to make minimum royalty payments and failure to use reasonable efforts to maximize sales of Marley-branded products, as well as consequential damages for the lost opportunity to commercialize the Marley brand in Canada as well as reputational damage to that brand.

5.10. Docklight is further entitled to specific performance of High Park's express obligation to provide sales reports and permit Docklight to inspect records pertaining to the High Park License. Docklight is unable to protect its interests with respect to that license in the absence of such relief, and money damages is an inadequate remedy for High Park's breach of these obligations.

### Second Cause of Action – Negligent Misrepresentation
### (Against Defendant Tilray)

5.1. Docklight incorporates the allegations set forth at ¶¶ 1.1 – 4.37 above.

5.2. As set forth above, in connection with its proposed merger with Aphria, Tilray represented to Docklight that it and Aphria remained fully committed to High Park's continued performance under the High Park License after the proposed merger was completed.

5.3. Tilray knew Docklight sought and would rely upon such assurances for the purpose of guiding its decision whether to exercise its right to terminate the High Park License and find a substitute partner for the Canadian market, or to remain bound by it.

5.4. Tilray failed to exercise due care when it made these representations because, on information and belief, Tilray and/or Aphria had no intent to cause High Park to continue to perform in accordance with the High Park License.

5.5. Docklight reasonably relied on Tilray's representations to its detriment, by foregoing its opportunity to terminate the High Park License and find a substitute party to perform the duties High Park was obligated to perform.

5.6. Docklight was proximately harmed by its reliance on Tilray's and Aphria's statement of intent to perform, by virtue of Tilray's post-merger abandonment of High Park's obligations under the High Park License.

## VI.  REQUEST FOR RELIEF

6.1. Docklight respectfully requests the following relief:

6.1.1. Damages in an amount to be determined at trial;

6.1.2. Specific performance of High Park's obligations to provide sales reports and permit records inspection, and a preliminary and permanent injunction ordering High Park to discharge those duties;

6.1.3. Attorney's fees and costs as provided under the terms of the High Park License and/or other applicable law;

6.1.4. Prejudgment interest to the extent permitted by law; and

6.1.5. Such other and further relief as the Court deems just and proper.

DATED this 10th day of December, 2021.

                **GORDON TILDEN THOMAS & CORDELL LLP**
                Attorneys for Plaintiff

                By   *s/Michael Brown*
                      Jeffrey M. Thomas, WSBA #21175
                      Mark A. Wilner, WSBA #31550
                      Michael P. Brown, WSBA #45618
                      600 University Street, Suite 2915
                      Seattle, Washington 98101
                      206.467.6477
                      jthomas@gordontilden.com
                      mwilner@gordontilden.com
                      mbrown@gordontilden.com

AMENDED COMPLAINT FOR DAMAGES AND SPECIFIC PERFORMANCE - 15

GORDON TILDEN THOMAS CORDELL | 600 University Street Suite 2915 Seattle, WA 98101 206.467.6477

# DECLARATION OF SERVICE

The undersigned declares under penalty of perjury under the laws of the State of Washington that on the below date, I caused a true and correct copy of this document to be delivered, via the method indicated, to counsel of record:

**Counsel for Defendants:**

Alicia Cobb, WSBA #48685  
1109 First Avenue, Suite 210  
Seattle, Washington 98101  
206.905.7000

☐ hand delivery via messenger  
☒ mailing with postage prepaid  
☐ via court electronic service  
☒ via email to: aliciacobb@quinnemanuel.com

DATED this 10th day of December, 2021, at Seattle, Washington.

*/s/ Jacqueline Lucien*  
Jacqueline Lucien, Legal Assistant  
Gordon Tilden Thomas & Cordell LLP

AMENDED COMPLAINT FOR DAMAGES AND SPECIFIC PERFORMANCE - 16

GORDON TILDEN THOMAS CORDELL  
600 University Street  
Suite 2915  
Seattle, WA 98101  
206.467.6477