UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DOCKLIGHT BRANDS INC,<br><br>    Plaintiff-Counterclaim Defendant,<br><br>    v.<br><br>TILRAY INC. and HIGH PARK HOLDINGS LTD,<br><br>    Defendants-Counterclaimants. | CASE NO. 2:21-cv-01692-TL<br><br>**ORDER REGARDING DISCOVERY PURSUANT TO JOINT LCR 37 SUBMISSION (DKT. 75)** |

On August 31, 2022, the parties filed a LCR 37 Submission Regarding Plaintiff's Responses to Defendants' Discovery Requests. Dkt. 75 (sealed, unredacted version at Dkt. 80 (*see* Praecipe Regarding LCR 37 Submission)).

## **BACKGROUND**

Plaintiff Docklight brought this lawsuit alleging Defendants High Park and Tilray[1] (the "High Park parties") materially breached a licensing agreement ("License") under which Docklight granted rights to Defendant High Park to manufacture, advertise, distribute, and sell adult-use cannabis products in Canada using the likeness, image, etc. of Bob Marley ("Licensed Products"). Docklight alleges that since October 2021, High Park ceased making royalty

---

[1] Docklight has dismissed with prejudice its negligent misrepresentation claim—the only claim against Tilray. Dkt. 63. 2 Defendant High Park Holdings Ltd. is a wholly-owned subsidiary of Tilray.

ORDER REGARDING DISCOVERY
PURSUANT TO JOINT LCR 37
SUBMISSION (DKT. 75) - 1

payments although it continues to sell and make money from Marley-branded products and is in continuing breach of its explicit obligation to provide Docklight documents that would allow it to understand and evaluate how High Park is exploiting the licensed intellectual property. Dkt. 1.

The High Park parties allege that Docklight breached the implied covenant of good faith and fair dealing and anticipatorily breached the High Park License by terminating it without conducting a required annual review of the economic terms of the guaranteed minimum royalty ("GMR") (which was required to reflect the arm's-length value of the High Park License), and by failing to give High Park its contractual right of first offer ("ROFO") in connection with Docklight's granting of rights to Turning Point Brands ("TPB"). Dkt. 66 ¶¶ 66-90. The High Park parties also alleged that the GMR does not reflect the arm's-length value of the rights granted under the License because it is uneconomic and because the GMR was negotiated with possible conflicts of interest. Dkt. 66 at ¶¶ 4.31, 62, 87.

According to the High Park parties, the issues raised in the Complaint, and in the High Park parties' responsive pleading, place several key people and entities at issue. Privateer Holdings, Inc. was co-founded in 2010 by Brendan Kennedy, Michael Blue, and Christian Groh (referred to as the "Founders"). Dkt. 66 at ¶ 6. The Founders collectively held over 70% of Privateer Holdings' voting power. *Id*. at ¶ 7. Both Plaintiff Docklight and Defendant Tilray were wholly-owned subsidiaries of Privateer Holdings from their founding until 2018, when Tilray became a publicly-traded company. *Id*. at ¶ 8. Docklight spun off from Privateer in February 2019, but the Founders continued to be majority shareholders of Docklight and control it as officers or directors. Dkt. 66 at ¶ 21, 23. In February 2018, Docklight and High Park—then both under the umbrella of Privateer Holdings—entered into a license agreement granting High Park the exclusive rights to manufacture, advertise, distribute, and sell certain Marley-branded

ORDER REGARDING DISCOVERY
PURSUANT TO JOINT LCR 37
SUBMISSION (DKT. 75) - 2

1 cannabis products in Canada (the "High Park License"), which was amended and restated in

2 December 2018. Dkt. 1-1 at § B ¶ 4.1; Dkt. 66 at ¶¶ 10, 16. Kennedy signed the High Park

3 License on behalf of High Park, and Blue signed on behalf of Docklight. Dkt. 66 at ¶ 17. In

4 December 2020, the parties entered into an amendment to the High Park License ("First

5 Amendment") that established a guaranteed minimum royalty ("GMR"). Dkt. 1-1 at ¶ 4.9. In

6 April 2021, the parties entered into another amendment to the License ("Second Amendment"),

7 Dkt. 1-1 at ¶ 4.17-4.18, effective at the time Tilray merged with Aphria.

8     The High Park parties served Docklight with requests for production and interrogatories

9 and the parties have reached impasse on several issues. These include the High Park parties'

10 request that Docklight: (a) treat Founders Blue and Groh as full custodians; (b) produce

11 documents sufficient to show payments by Docklight pursuant to its license to use the Marley

12 brand for cannabis-related product categories; (c) respond to an interrogatory asking for the

13 identification and description of any lost opportunities Docklight had to commercialize the

14 Marley brand in Canada; and (d) produce documents related to any royalties set forth in the High

15 Park License and amendments.

16     **DISCUSSION**

17     "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any

18 party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

19 Under Rule 26, the concept of relevance "has been construed broadly to encompass any matter

20 that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or

21 may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

22     If the parties are unable to resolve their discovery issues, the requesting party may move

23 for an order to compel. Fed. R. Civ. P. 37(a)(1). The parties indicate that they have met and

1  conferred and have been unable to resolve their disputes as to the following discovery issues.

2  Having carefully considered the parties' arguments, the Court **ORDERS** as follows:

3  A.     <u>Revisions to Docklight's Proposed ESI Custodians</u>

4  Docklight has proposed to search documents from seven custodians: Damian Marano, Patrick Moen, Christopher Moore, Vera Counsellor, Adam Amsel, Heather Wallace, and Hunter Oetinger. The High Park parties have asked Docklight to add Michael Blue and Christian Groh as full custodians, rather than just custodians for limited search terms. Docklight has refused to make Michael Blue and Christian Groh full custodians but has offered to "consider applying targeted search terms" to Blue and Groh.

In its initial disclosures, Docklight lists Blue and Groh as having "information related to corporate structures and relationships, license negotiations, corporate responsibilities under the licenses at issue in this case, and actions taken to execute obligations under those licenses." Dkt. 75, Ex. A at 2. In response to the High Park parties' Interrogatory No. 1 asking Docklight to identify individuals with knowledge about the case, Docklight identified Blue and Groh as its first two "Potential Docklight Witnesses," and repeated its explanation of their knowledge from the initial disclosures. *Id.*, Ex. B at 9-10 (Docklight's Responses & Objections to High Park's First Set of Interrogatories). The High Park parties also argue that Blue and Groh have a direct, personal interest in advancing Docklight's interpretation of the High Park License. Docklight agreed to develop products sold under brands affiliated with the late musician, Bob Marley, under an intellectual property license granted to it by Marley Green LLC, which is owned by the Estate of Bob Marley (the "Marley Estate"). *See* Dkt. 1-1 at ¶¶ 4.1–4.7. In exchange, Docklight agreed to pay royalties to the Marley Green, including guaranteed minimum royalties. *Id.* at ¶ 4.6. In 2019, Blue and Groh provided the Marley Estate with personal guarantees of millions of

dollars a year to guarantee Docklight's obligations. The High Park parties contend that these personal guarantees establish motive for why Blue and Groh may have directed Docklight to refuse to engage in the required annual review of the economic terms of the GMR. *Id.*, Ex. C at 1 (Sept. 9, 2019 Guaranty Agreement).

      **Court's Order:**  A party is generally entitled to obtain production of non-privileged documents in the possession, custody or control of the responding party that are relevant to the parties' claims or defenses. Pursuant to Fed. R. Civ. Pro. 26(b)(2)(C), however, the court may limit or preclude even relevant discovery if the burden and expense of the proposed discovery outweighs its likely benefit.

      Docklight disclosed Blue and Groh as witnesses with knowledge about "license negotiations," "corporate responsibilities under the licenses at issue in this case," and "actions taken to execute obligations under those licenses." Thus, there is no question that these witnesses and events are relevant to this case. Docklight argues that the addition of these witnesses as ESI custodians will add additional document review costs as an approximate 65,000 additional documents will need to be reviewed. However, Docklight admitted that the 65,000 additional document figure was not de-duplicated against its existing custodians' documents, nor as between documents in the possession of Blue and Groh. Dkt. 76, Beattie Decl. ¶ 4. Docklight also has not demonstrated that adding its witnesses as EI custodians is unduly burdensome. *See* Fed. R. Civ. P. 26(b)(2)(C); *Pham v. Wal–Mart Stores, Inc.*, 2011 WL 5508832, at *3 (D.Nev. Nov. 09, 2011) (citing *Residential Constructors, LLC v. Ace Prop. and Cas. Ins. Co.*, 2006 WL 3149362, at *9 (D.Nev. Nov. 1, 2006)) (To satisfy this burden, a party "must provide sufficient detail regarding the time, money and procedures required to produce the requested documents.") The fact that production of documents will be time consuming and expensive is not ordinarily a

1  sufficient reason to refuse to produce material if the requested material is relevant and necessary

2  to the discovery of admissible evidence. *Pham*, 2011 WL 5508832, at *3 (citing *In re Toys "R"*

3  *Us–Delaware, Inc. Litigation*, 2010 WL 4942645, at *6 (C.D. Cal. July 29, 2010)).

4      Defendants' request to add Michael Blue and Christian Groh as Docklight's full EI

5  custodians is hereby **GRANTED**.

6  B.    Requests for Production

7      1.    Request for Production No. 3 to Docklight

8      In this request, the High Park parties seek "[d]ocuments sufficient to show all

9  payment by Docklight pursuant to the Marley License." Docklight objects that the requested

10  documents are not relevant to the issues in dispute and therefore, the request places an undue

11  burden on Docklight. Docklight further objects to the extent any third party has a confidentiality

12  interest in nondisclosure of the documents.

13      **Court's Order:** Docklight alleges that it relies "upon its obligations under the Marley

14  License[2] to support its arguments for how it is allegedly harmed here"; that "[t]he licensing

15  agreement, and the revenues Docklight expected from it, were and remain central to Docklight's

16  efforts to fulfill its obligations under the Marley License; and that "Docklight remains obligated

17  to pay—and has continued to pay—its minimum royalties to Marley Green under the Marley

18  License." *See* Dkt. 1-1, 4.1; 4.35.

19      Docklight argues that this mere "mention" in its complaint of the Marley License was

20  included only as narrative background. However, the Complaint is clear that the High Park

---

[2] The Marley License is a 2016 license between Docklight and Marley Green LLC, under which Docklight obtained the rights from the Marley Estate to use the Marley brand in the development, sale, and licensing of over 60 cannabis-related product categories worldwide. Dkt. 1-1 at ¶ 4.6; Ex. H (July 22, 2016 License Agreement) at § 4, Sched. B.

parties' alleged failure to perform under the High Park License harmed Docklight with respect to its obligations under the Marley License under which it allegedly "has continued to pay … its minimum royalties to Marley Green." *See* Dkt. 1-1, Compl. ¶ 4.35. Docklight also avers that the High Park parties' alleged actions have caused harm "beyond the minimum royalties High Park is obligated to pay," including "financial and reputational harm on the Marley brand." *Id.* ¶ 4.36. The High Park parties argue that discovery into payments made by Docklight to the Marley Estate is necessary to determine whether any purported harm to Docklight and/or the Marley Estate was tied to the High Park parties' alleged contractual breaches. The High Park parties also argue that this discovery may lead to admissible evidence regarding their claim that the GMR was uneconomic based on the limited demand for Marley-branded products across Canada and beyond.

The Court finds that the information requested is relevant and Docklight fails to show any undue burden. Docklight also objects "to the extent any third party has a confidentiality interest in nondisclosure of the documents" and believes the High Park parties are simply wanting to "gain sensitive information for business purposes." Dkt. 75, pp. 9, 12. However, the Court's entry of the parties' Stipulated Protective Order (Dkt. 39) ensures that any confidential business information disclosed will only be used for prosecuting, defending, or attempting to settle this lawsuit. Dkt. 39. Accordingly, the Court **GRANTS** the High Park parties' motion to compel Docklight to produce documents responsive to Request for Production No. 3.

      2.      Revised Request for Production No. 11

The High Park parties request documents "related to any royalties set forth in the High Park License Agreements and amendments thereto, including any analyses, memoranda, presentations, or studies assessing the GMR set forth therein in light of expected sales of

Licensed Products." Docklight objects to the first part of the request as it is "grossly overbroad, especially in light of the time frame of the request" but would respond to the part from "including" to the end …. Dkt. 75, p. 16.

**Court's Order:**  There is no dispute that the royalties due under the High Park License are central to this case and Docklight's objection to the time frame is moot as the High Park parties assert that they seek information from November 2017 to the present. Docklight's objection to use of the term "related to" is without merit. *See*, *e.g.*, *Luken v. Christensen Grp. Inc.*, 2018 WL 1457244, at *7-8 (W.D. Wash. Mar. 23, 2018) (granting motion to compel "all documents and communications related to sales or income taxes to be paid related to the purchase or exchange of yachts … from 2001 to present," where Plaintiff "put his … financial documents at issue through his claims"). Accordingly, the Court **GRANTS** the High Park parties' motion to compel Docklight to produce documents responsive to Revised Request for Production No. 11.

C.   Interrogatory No. 3

In this interrogatory, the High Park parties asked Docklight to "[i]dentify and describe with particularity any allegedly lost opportunity to commercialize the Marley brand in Canada. For each such opportunity, identify any business partner with whom Docklight had an opportunity to commercialize the Marley brand in Canada, the date(s) on which such an opportunity was available, the reason Docklight did not take advantage of the opportunity, and any documents evidencing the opportunity and the reason Docklight did not take advantage of the opportunity." Docklight responded that it did not seek to identify any particular licensees, "because it relied on High Park to fulfill its obligations under the License" and in so relying "Docklight lost the opportunity to identify a different licensee …". Dkt. 75, pp. 12-13. Docklight

also objects that the terms "lost opportunity" and "commercialize" are vague, ambiguous and overbroad.

**Court's Order:** Docklight's objection that the terms "lost opportunity" and "commercialize" are vague, ambiguous and overbroad are without merit as Docklight alleges in its complaint that "Defendants' wrongful conduct has caused Docklight to irretrievably lose a critical opportunity to exploit the massive Canadian market for cannabis-related consumer goods," and that "[t]hese lost opportunities have harmed Docklight." Dkt. 1-1, ¶ 4.36.

The High Park parties are entitled to an identification of any specific lost opportunities to commercialize the Marley brand in Canada, even if the answer is "none". The motion to compel Docklight to provide a more specific response to Interrogatory No. 3 is **GRANTED**.

It is further **ORDERED** that Docklight shall provide responses and documents to the High Park parties, consistent with this Order within ten (10) days.

DATED this 6th day of September, 2022.

BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER REGARDING DISCOVERY
PURSUANT TO JOINT LCR 37
SUBMISSION (DKT. 75) - 9