UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DOCKLIGHT BRANDS INC,<br><br>    Plaintiff-Counterclaim Defendant,<br><br>    v.<br><br>TILRAY INC. and HIGH PARK HOLDINGS LTD,<br><br>    Defendants-Counterclaimants. | CASE NO. 2:21-cv-01692-TL<br><br>**ORDER REGARDING DISCOVERY PURSUANT TO JOINT LCR 37 SUBMISSION (DKT. 87)** |

On October 21, 2022, the parties filed a LCR 37 Submission Regarding Defendants' Responses to Plaintiff's Discovery Requests. Dkt. 87. Plaintiffs' discovery requests were directed to Defendants Tilray[1] and High Park. *Id.*

## BACKGROUND

Plaintiff Docklight brought this lawsuit alleging Defendants High Park and Tilray materially breached a licensing agreement ("License") under which Docklight granted rights to Defendant High Park to manufacture, advertise, distribute, and sell adult-use cannabis products in Canada using the likeness, image, etc. of Bob Marley ("Licensed Products"). Docklight alleges that since October 2021, High Park ceased making royalty payments although it continues to sell and make money from Marley-branded products and is in continuing breach of

---

[1] Docklight dismissed with prejudice its negligent misrepresentation claim—the only claim against Tilray. Dkt. 63. 2 Defendant High Park Holdings Ltd. is a wholly-owned subsidiary of Tilray.

ORDER REGARDING DISCOVERY
PURSUANT TO JOINT LCR 37
SUBMISSION (DKT. 87) - 1

its explicit obligation to provide Docklight documents that would allow it to understand and evaluate how High Park is exploiting the licensed intellectual property. Dkt. 1.

High Park alleges that Docklight breached the implied covenant of good faith and fair dealing and anticipatorily breached the High Park License by terminating it without conducting a required annual review of the economic terms of the guaranteed minimum royalty ("GMR") and by failing to give High Park its contractual right of first offer ("ROFO") in connection with Docklight's granting of rights to Turning Point Brands ("TPB"). Dkt. 66 ¶¶ 66-90. High Park also alleged that the GMR does not reflect the arm's-length value of the rights granted under the License because it is uneconomic and was negotiated with possible conflicts of interest. Dkt. 66 at ¶¶ 4.31, 62, 87.

## DISCUSSION

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Under Rule 26, the concept of relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

If the parties are unable to resolve their discovery issues, the requesting party may move for an order to compel. Fed. R. Civ. P. 37(a)(1). The parties indicate that they have met and conferred and have been unable to resolve their disputes as to the following discovery issues. Having carefully considered the parties' arguments, the Court **ORDERS** as follows:

A.   <u>Interrogatory 11</u>

   Did the product de-listings you allege at paragraphs 30 and 40 of your Counterclaims constitute material information that should have been disclosed to Tilray's shareholders and/or potential shareholders? If your answer is no, please

identify all material facts that support that answer, identify all documents that refer to or evidence those facts, and identify all persons with knowledge of those facts.

The Court previously ordered Tilray to supplement its response to this interrogatory. Dkt. 27 at 4:8-16:

> "The information sought in these Interrogatory Nos. 11 and 12 is relevant to Defendants' claim the de-listings rendered the parties' agreement financially unworkable. Docklight argues if Tilray did not report the de-listings under securities regulations, that tends to undercut its contention that they were material in the context of the License. Tilray does not respond to the interrogatory directly, but states 'it does not contend the information should have been disclosed to shareholders.' Docklight's motion is GRANTED; Tilray is ORDERED to submit a supplemental response to Interrogatory Nos. 11 and 12, specifically answering the questions posed within five (5) days of this Order. Tilray need not disclose any privileged information to answer the interrogatories as written."

Tilray supplemented its responses as follows:

> The de-listings alleged at paragraphs 30 and 40 of Tilray's Counterclaims do not constitute "material" information within the meaning of any regulatory "materiality" threshold applicable to post-merger Tilray requiring the disclosure of "material" information to shareholders and/or potential shareholders. The foregoing answer is supported by guidance the SEC has provided in determining materiality through Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45150 (Aug. 1, 1999). All of New Tilray's SEC filings were reviewed by counsel in order to ensure compliance with all company obligations.

Dkt. 47 at 4:8-16.

**Court's Order:** The motion to compel is **DENIED** as Tilray has sufficiently answered this interrogatory. Tilray has answered "no" to the first part of the interrogatory and in response to the second part, states that it relied on SEC guidelines and advice of counsel in determining that the de-listings were not "material" for purposes of disclosure to its shareholders. The parties are free to argue the de-listings, while not "material" for SEC purposes, were material vis-à-vis the License. Docklight has failed to convince the Court that Tilray is in contempt or that a more complete answer to this interrogatory will result in discoverable material.

B.   Tilray's "Waiver" Objection Regarding Multiple Request for Production ("RFP")

On December 3, 2020, the parties settled a prior dispute over Docklight's allegations that Defendants were in breach of the License and Docklight released Tilray from "from any and all causes of action… for, upon, or by reason of, any matter, course or thing whatsoever from the beginning of time through the Effective Date [December 3, 2020], in connection with, arising out of, or in relationship to the License Agreement." Docklight's RFPs 19, 26, 28-30, and 33 seek documents pertaining to Defendants' efforts to exploit the Licensed Property during the period January 2020 through Docklight's termination of the License on February 9, 2022. Tilray originally objected to producing the requested documents, arguing that Docklight's release precludes any pre-release discovery because Docklight's right to take discovery to support its post-settlement claims did not arise until after it brought those claims in November 2021.

Tilray now withdraws its objections to these RFPs "made on the basis of the release" but "reserves the right to challenge any claims or arguments on the merits that Docklight may later assert based on pre-release conduct."

**Court's Order:**   This issue is **DENIED AS MOOT** as Tilray has withdrawn its objections to RFPs 19, 26, 28-30, and 33. Docklight urges the Court to nevertheless determine the merits– *i.e.*, whether the release precludes discovery of pre-release evidence because Tilray has confirmed that it will make this objection in response to other discovery requests. However, the Court declines to issue a preemptive ruling to any possible future objections.

C.   RFP 19 to Tilray

The original RFP 19 requested: "all emails, text messages, and other documents and data that refer to, evidence, or relate to the performance of any of High Park Holdings Ltd.'s obligations under the License Agreement, including without limitation analyses of market(s) and

sales, sales forecasts, plans and strategies."

After the parties conferred, Docklight agreed to modify this request to refer to the particular License provisions to which the RFP pertained:

> Produce all emails, text messages, and other documents and data that refer to or evidence High Park Holdings Ltd.'s performance, between June 7, 2020 and June 7, 2022, of its obligations under License Sections 1.3 (as revised), 2, 4, 5.4, 6.1, 8.3, 8.5, 10.3, 12.3(a)-(c), and the section entitled License Schedule—Commercial Collaboration.

Dkt. 87 at 12.

After another conference, Docklight further revised its request as follows:

> **Section 4.1**: Provide the following with respect to Licensed Products: (1) all documents submitted to or received from Health Canada and/or any provincial or other government authority related to cultivation and manufacture of plants and products; (2) all communications with wholesale buyers related to concerns or complaints about plant or product quality; (3) all documents reflecting or referring to any audits by Health Canada or any provincial or government agency pertaining to plant or product quality, safety, or defects; (4) all documents reflecting or referring to any internal audits by you pertaining to plant or product quality, safety, or defects; and (5) any communications with Docklight pertaining to plant or product quality, safety, or defects.
>
> **Section 4.2**: If you used any third party/ies for the manufacture of Licensed Products, your response regarding the duties set forth in Section 4.1 should include all documents and communications respecting their manufacture of those products. Also, please produce any documents reflecting or referring to any agreement between you and any third party for the production of Licensed Products.
>
> **Section 5.1**: If you had any arrangement or agreement with another distributor, subdistributor, or broker with respect to distribution of Licensed Products, produce all documents reflecting such agreement(s) or arrangement(s) and all communications with any such distributor, subdistributor, or broker relating to Licensed Products.
>
> **Section 5.4**: With respect to Licensed Products, please produce all documents reflecting: (1) the number of plants cultivated, identified by lot and facility of origin; (2) the harvest date, release date, and sale/transfer date, by lot of each flower and extract product; (3) any loss or destruction of plants; (4) re-allocation of plants initially intended for Licensed Products to products other than Licensed Products; (5) the segregation of plants or extracts for use in Licensed Products from plants or extracts for use in products that are not Licensed Products; (6)

forecasts for the number of plants required to meet anticipated demand; (7) your procedures for ensuring that a sufficient number of plants were in production to meet anticipated demand for product(s); (8) any deviation from or failure to follow any such procedure; (9) all data and information you used to anticipate consumer demand to ensure your compliance with Section 5.4; (10) all orders for products; (11) internal and external communications regarding current and anticipated demand for products and any failure or inability to meet that demand; and (12) any communications reflecting or referring to complaints or concerns expressed by distributors, brokers, or retailers regarding sell-through of products.

**Section 6.1**: All documents reflecting the quality assurance inspections and retention of samples required by this provision. Also, to the extent not produced with respect to other provisions set forth above, all documents reflecting or referring to any complaints or concerns expressed by any customer regarding the quality of Licensed Products.

**Section 8.3**: With respect to Licensed Products, all records reflecting: (1) "normal deductions such as returns, discounts, allowances and uncollectible amounts"; (2) "any applicable excise taxes"; and (3) "promotional items given away for free" and the wholesale value of such items.

**Section 12.2**: We mistakenly referred to Section 12.3(a)-(c) in our RFP. What Docklight is requesting pertains to 12.2(a)-(c). For (a), please produce documents sufficient to demonstrate compliance as well as any documents and communications referring to or reflecting a failure or inability to obtain a required approval, license, or certification and/or the lapse of any required approval, license, or certification. For (b), please produce documents sufficient to show staffing levels and any changes to staffing levels at all growing, manufacturing, and distribution facilities that were involved in the growing, manufacturing, or distribution of Licensed Products.

Tilray objects to the revised RFP, which seeks documents that are not relevant to any party's claim or defense. In addition, in a recent interrogatory response, Tilray provides its explanation for why sales of Marley-branded products fell from 2020 to 2021. Interrogatory 23 (served on September 16, 2022) sought, in pertinent part, "the reasons for the significant decline in sales of Licensed Products in or around the first quarter of calendar year 2021." Tilray states the decline in sales was due to "price deflation in the market; government stay-at-home orders in response to the COVID-19 pandemic; increased competition in flower quality and potency; high prices for Marley Natural vapes versus the competition; limited Marley Natural vape flavors and

formats compared to the competition; and the de-listing of certain Marley Natural products by certain provincial licensing boards." Dkt. 87 p. 19.

**Court's Order**: Docklight claims Defendants failed to use commercially reasonable efforts to maximize sales of licensed products and there is no question that Defendants' 2021 sales of Marley-branded products were half of what they were in 2020. Dkt. 51 at 10:4-11. RFP 19 (and its revisions) were Docklight's attempts to obtain an explanation for the decline in sales. Docklight speculated the decline could have been caused by Defendants' breach of one or more of its obligations under the License.

However, the Court agrees that Docklight's request as written and revised, is overly broad and seeks a wide range of discovery based merely on speculation that breach of one or more of the numerous subsections of the License caused the decline in sales. Now that Tilray has provided its explanation for the decline in sales, Docklight is entitled to tailor discovery requests relating to, and designed to test, the representations in Tilray's Answer to Interrogatory 23.

Accordingly, the motion to compel a response to RFP 19 is **DENIED**. However, Docklight may issue additional interrogatories and requests for production based on Tilray's explanation. Additionally, this ruling does not limit Docklight from pursuing discovery of other explanations for the decline in sales if those inquiries seek relevant information.

D.   RFP 26

    Produce all emails, text messages, and other documents that refer to the forecasting, order, purchase, sell-through, de-listing, or return of any Licensed Products by or on behalf of any private or government wholesale purchaser, including but not limited to the Ontario Cannabis Store.

    Revised RFP 26

    Produce all communications between January 2020 and February 2022 between or on behalf of you and any private or government wholesale purchaser, including

but not limited to the Ontario Cannabis Store, that refer to Licensed Products.

Tilray agrees to produce all communications between January 2020 and February 2022 between or on behalf of Tilray and any private or government wholesale purchaser that refer to Licensed Products sold under the *Marley Natural* brand. According to Tilray, the seven brands released from the License in December 2020 by the First Amendment, are not relevant. Dkt. 87 at 3. Tilray argues that Docklight's claim in this case is limited to the performance of Marley-branded products (*see, e.g.,* Dkt. 1-1 ¶¶ 5.2, 5.9) and when Defendants have raised product de-listings as part of their defense, the relevant de-listings have been limited to Marley-branded products (*see, e.g.,* Dkt. 66 ¶ 47) (Because many of the Marley Natural products were de-listed from the Canadian market and could no longer be sold by Tilray, this de-listing materially affected revenues from Marley-branded products.").

Contrary to Defendants' assertion that producing documents related to other de-listings is burdensome and irrelevant, Defendants identified six of the thirteen de-listed products as Grail products and requested Grail-related discovery from Docklight. Dkt. 87 p. 24; Dkt. 88, Brown Decl., Ex. D, E, F.

**Court's Order:** The Court **GRANTS** the motion to compel Tilray to produce documents in response to Revised RFP 26.

E.  <u>RFP No. 28</u>

> Produce all licenses and other agreements pursuant to which you manufactured, marketed, advertised, distributed, or sold any inhalable adult use recreational cannabis products sold under brands other than Marley, including without limitation Canaca, Broken Coast, Riff, and Dubon.

Defendants argue that this request seeks terms of its agreements with other parties that are not relevant to its performance under the License at issue. Defendants note these agreements

do not involve products that are comparable to the Marley-branded products because they are value brands and are sold in different geographic markets and subject to different regulations.

Docklight counters that license agreements between Defendants and third parties involving competing products are relevant to Docklight's claim that Defendants failed to use commercially reasonable efforts to exploit the Licensed Products. If these agreements included terms that gave more favorable treatment for Defendants' house-brands over competing Marley-branded products, this could help explain the decrease in sales of Licensed Products and would support Docklight's claim for breach. Docklight also notes that the dispute settled by the parties in 2020 involved an allegation by Docklight that Defendants were granting this sort of preference to their own brands over the Marley brand in 2019/2020.

**Court's Order:**  In general, a party's conduct in its performance of other contracts is largely irrelevant to its intent to perform under another contract. Here however, Docklight has shown that the contracts may be relevant because they involve competing brands. Accordingly, the Court **GRANTS** the motion to compel Tilray to produce documents in response to RFP 28.

F.    RFP 29

> Produce all documents that reflect sales forecasts, actual sales, revenues, expenses, and profits for all inhalable adult use recreational cannabis products you sold from January 2020 through the present, including products sold under your own brands and those sold under brands owned by third parties, the latter to include, without limitation, Canaca, Broken Coast, Riff, Dubon, Marley, and Grail.

Tilray agrees to produce nonprivileged documents sufficient to show Tilray's sales forecasts, actual sales, revenues, expenses, and profits for all inhalable adult use recreational cannabis products Tilray sold in Canada under the Marley brand from December 4, 2020, through the present but objects to the production of the information sought as to any non-Marley-

branded products.

Docklight contends it needs information regarding the sales and revenues for Defendants' products that competed with Marley-branded products to understand the extent to which the decline in Licensed Product sales in 2021 reflected a trend across all similar products in Canada, or whether it was limited to Licensed Products. Docklight also agreed that the RFP could be limited to Canada. Dkt. 88, Brown Decl., Ex. G at 1.

**Court's Order:** In a recent discovery response, Tilray explained that the drop in sales of Marley-branded products was caused by "competition" from similar products sold under different brands. Dkt. 88, Brown Decl., Ex. H at 8:1-8. RFP 29 is directed only at similar products—adult use recreational THC products in the same formats as Licensed Products. Accordingly, the Court **GRANTS** Docklight's motion to compel Tilray to produce documents in response to RFP 29.

G.  <u>RFP 33</u>

Produce all documents reflecting your respective budgeted and actual expenditures on the marketing, distribution, manufacture, advertising, brand development, promotion, and sale for each brand (including your own brands) of inhalable adult use recreational cannabis products you manufactured, advertised, marketed, or sold for the period January 2020 to the present.

**Court's Order:** The parties' positions as to this discovery request are almost identical to their positions as to RFP 29. Tilray agrees to produce the information related only to the Marley brand and Docklight argues that Defendants' efforts to promote sales of Licensed Products and products that competed with Licensed Products are directly relevant to Docklight's claims and Defendants' defenses. For the same reasons the Court granted Docklight's motion to compel as to RFP 29, the Court **GRANTS** the motion to compel Tilray to produce documents in response to RFP 33. As with RFP 29, RFP 33 shall be similarly limited to Canada.

H.   RFP 37 (Mistakenly referred to as "RFP 28" in Docklight's Third Set of RFPs)

> Produce all documents reflecting or related to any investigation(s) related to alleged or suspected improper conduct on the part of Brendan Kennedy, Christian Groh, and/or Michael Blue, including without limitation any investigation conducted by you, at your direction or on your behalf, and/or by any special committee, related to the claims in the Delaware lawsuit entitled *In re Tilray Reorganization Litigation* [the "shareholder derivative action"].

The first issue is whether the information sought by this request is relevant to any claim or defense. Docklight argues that Defendants placed the "self-dealing" conduct of these individuals at issue when it cited to shareholder derivative action in an earlier brief and argued that Blue, Groh and Kennedy (the "Founders") were spurred by their own personal interests and knowingly obligated High Park to an uneconomical GMR:

> Notably, although the Amended Complaint alleges that the High Park license agreement was reviewed by a "special committee of independent directors" in 2019 during the Privateer spin-off, Dkt. 1-1 at ¶ 4.7, the Founders and these supposedly "independent" directors are currently facing a shareholder derivative action claiming that the Founders and directors were conflicted. *See Ganesh Kasilingam, v. Tilray, Inc.*, 2021 WL 6335279 (S.D.N.Y.). Further, the Amended Complaint is silent on the conflicted nature of the First Amendment, which imposed the GMR.

Dkt. 51, p. 5, fn.1.

Tilray states that the only responsive litigation to this request is the investigation convened by Tilray's special litigation committee regarding allegations of self-dealing in connection with the 2019 Privateer merger, which has nothing to do with the Docklight-High Park License. Tilray explains that these internal investigatory materials were prepared at the direction of counsel for purposes of rendering legal advice in the shareholder derivative action and they are therefore, protected by the attorney-client privilege and work product doctrine.

**Court's Order:**  The Court agrees that the information sought may be relevant to Tilray's claims that self-dealing by the Founders resulted in an uneconomical GMR and

ORDER REGARDING DISCOVERY
PURSUANT TO JOINT LCR 37
SUBMISSION (DKT. 87) - 11

1    **GRANTS** Docklight's motion to compel Tilray to produce documents in response to RFP 37. If
2    Tilray withholds any document based on a claim of privilege, it shall produce a privilege log
3    specifically identifying the withheld documents.
4         It is further **ORDERED** that Tilray shall provide responses and documents, consistent
5    with this Order, to Docklight within ten (10) days.
6         DATED this 31st day of October, 2022.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge