The Honorable Tana Lin

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| DOCKLIGHT BRANDS, INC., | NO.  2:21-cv-01692-TL |
| Plaintiff, | SECOND AMENDED COMPLAINT FOR DAMAGES & SPECIFIC PERFORMANCE |
| v. | |
| TILRAY INC. and HIGH PARK HOLDINGS, INC., | |
| Defendants. | |

## I.  INTRODUCTION AND OVERVIEW OF CLAIMS

1.1.    Defendant Tilray, Inc. ("Tilray") has caused its wholly-owned subsidiary Defendant High Park Holdings Ltd. ("High Park") to breach its license agreement with Plaintiff Docklight Brands, Inc. ("Docklight") to produce, market, sell, and distribute in Canada Bob Marley-branded cannabis products, as well as products sold under the "Grail" brand, and to pay Docklight for its use of those brands.

1.2.    High Park's breach has caused substantial harm to Docklight, in the form of royalties Defendants guaranteed but have failed to pay, additional royalties expected but lost by

SECOND AMENDED COMPLAINT FOR DAMAGES &
SPECIFIC PERFORMANCE - 1
No. 2:21-cv-01692-TL

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

virtue of Defendants' failure to make reasonable efforts to perform under the license, and

irreparable harm to Docklight's interests as licensee of the Bob Marley brand.

1.3.    By this action Docklight seeks a judgment for damages and attorney's fees arising

from Defendants' breach of contract.

## II.  PARTIES

2.1.    Plaintiff Docklight Brands, Inc. ("Docklight") is a leader in the development of

premium cannabis-related consumer goods.  Headquartered in Seattle and formed under the laws

of the State of Delaware, Docklight develops products sold under brands affiliated with the late

musician, songwriter, and activist Bob Marley, under an intellectual property license granted to it

by Marley Green LLC, which is owned by the Estate of Bob Marley (the "Marley License").

2.2.    Defendant Tilray Inc. ("Tilray") is a producer and distributor of cannabis-related

products.  It is a corporation organized under the laws of the State of Delaware with its principal

office in New York, New York.

2.3.    High Park is a wholly owned subsidiary of Tilray.  On information and belief, it is

a Canadian limited liability company headquartered in Toronto, Ontario.  At all times relevant to

this dispute, Tilray was the alter ego of High Park and as such liable for the breaches alleged

herein.

## III.  JURISDICTION AND VENUE

3.1.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) and 1441(b).

3.2.    High Park and Tilray have consented to personal jurisdiction in this Court by

removing this action from King County Superior Court and litigating in this Court.

3.3.     Venue is proper because: (a) in the High Park License, High Park expressly

consented to venue in the courts located in King County, Washington; (b) High Park transacted

SECOND AMENDED COMPLAINT FOR DAMAGES &
SPECIFIC PERFORMANCE - 2
No. 2:21-cv-01692-TL

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

business in King County at the time this dispute arose; and (c) High Park negotiated and entered

into the High Park License with Docklight in King County.

## IV.  FACTUAL ALLEGATIONS

**A.      The High Park License**

4.1.      In February 2018, Docklight entered into a license agreement with High Park for

the exclusive right and obligation to manufacture, advertise, distribute, and sell certain Marley-

branded and other cannabis products ("Licensed Products") in Canada.

4.2.      In December 2018, Docklight and High Park entered into a superseding license

agreement—the "License"—that remains in effect today and forms the basis for Docklight's

claims.

4.3.      The License obligates High Park to:

4.3.1.  "[M]arket, advertise, promote and sell the Licensed Products to Customers

. . . consistent with good business practice, in each case using commercially reasonable efforts to

maximize sales of the Licensed Products";

4.3.2.  "[E]stablish and maintain a sales and marketing organization sufficient to

develop to the satisfaction of Licensor the market potential for the sale of the Licensed Products,

independent sales representatives and a distribution organization and facilities sufficient to make

the Licensed Products available to meet demand";

4.3.3.  "[D]evelop and execute a marketing plan in concert with Licensor

sufficient to fulfill its obligations under this Agreement . . .";

4.3.4.  "[U]se commercially reasonable efforts during the License Period to (a)

manufacture the Licensed Products; (b) distribute and sell the Licensed Products; and (c) engage

in Advertising and Promotion (as defined below) in the Licensed Territory";

SECOND AMENDED COMPLAINT FOR DAMAGES &
SPECIFIC PERFORMANCE - 3
No. 2:21-cv-01692-TL

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

4.3.5.  "Upon Licensor's written request and within fifteen (15) days following Licensor's written request . . . furnish to Licensor complete and accurate written statements identifying each Reseller, the number of Licensed Products sold itemized by product and retail location, gross sales prices, itemized deductions from gross sales prices . . . and Net Sales of the Licensed Products, by month preceding the date of such report . . ."; and

4.3.6.  Allow Docklight "to examine and copy all books and other records of the Licensee relating the Licensed Products and the subject matter of this Agreement during the License Period and for a period of two (2) years thereafter."

4.3.7.  Refrain from disclosing the terms and conditions of the High Park License to third parties.

4.4.    High Park breached of every one of these obligations.

**B.    The First Dispute Over High Park's Failure of Performance**

4.5.    In May 2020, a dispute developed over High Park's failure to make reasonable efforts to manufacture, distribute, advertise, and sell Licensed Products under the License.

4.6.    In December 2020, the parties settled the dispute.  In connection with the settlement agreement, the License was amended to, among other things: (1) obligate High Park to make minimum guaranteed royalty payments to Docklight, regardless of sales, in the total amount of $10,000,000 Canadian (roughly $8,000,000 U.S.) in equal quarterly installments from January 2021 through December 2024; and (2) allow High Park to terminate the License for convenience, in exchange for its payment to Docklight of $1.5 million Canadian for that right. These terms were reflected in an Amendment to the License (the "First Amendment").

4.7.    The duties imposed on High Park, as set forth at ¶ 4.3 above, remained the same under the amended agreement.

SECOND AMENDED COMPLAINT FOR DAMAGES &
SPECIFIC PERFORMANCE - 4
No. 2:21-cv-01692-TL

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

1
2

## C.     Tilray's Merger with Aphria

3
4

4.8.     Shortly after the parties' settlement in December 2020, High Park's parent, Tilray,

5
6

Inc., announced it was in discussions to merge with Aphria, Inc., another licensed producer of

7
8

cannabis products in Canada that competed with Tilray.  In connection with that merger,

9
10

Docklight agreed to waive its right to terminate the License because of the change of control that

11
12

would result from the merger, and High Park agreed to surrender its right to terminate the

13
14

License for convenience.  That agreement was reflected in the Second Amendment to the

15
16

License ("Second Amendment").

17
18

4.9.     The Tilray-Aphria merger was completed in May 2021, with Tilray acquiring all

19
20

of the outstanding equity of Aphria.  The rights and obligations under the License remained in

21
22

full force and effect, and fully binding on High Park.

23
24

## D.     High Park's Breach of the License

25
26

4.10.     Prior to the merger, High Park timely made its first two minimum quarterly

27
28

royalty payments to Docklight, in January and April 2021.

29
30

4.11.     High Park was 19 days late making its July 2021 payment.  In attempting to

31
32

explain the delay, it wrote that "There was a delay in approving this payment as Tilray's new top

33
34

management was familiarizing itself with the long-term agreements that legacy Tilray has,

35
36

including the one that Tilray has with Docklight."  Tilray's excuse was a pretext. Two months

37
38

earlier Tilray's "top management" (the very same people) had already reviewed the High Park

39
40

License as part of the merger-related due diligence process.

41
42

4.12.     In July 2021, Tilray Chief Operating Officer Jim Meiers requested a call with

43
44

Docklight, where he informed members of Docklight management that Tilray would "walk

45

away" from its obligations under the License unless it received certain unspecified concessions.

---

SECOND AMENDED COMPLAINT FOR DAMAGES &
SPECIFIC PERFORMANCE - 5
No. 2:21-cv-01692-TL

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

When pressed for data to support the request of concessions, Tilray did not provide any. Mr. Meiers was further unable to explain why Tilray had recently discontinued a number of popular Marley products. He claimed that the License was "too expensive," despite previously strong sales of the Marley products, the company's publicly reported cash on hand of approximately $376 million, and the company's recent award of cash compensation in the extraordinary amount of approximately $13 million to CEO Irwin Simon, who has publicly proclaimed that Tilray will generate $4 billion in revenue by 2024.

4.13.    High Park failed to make the October 2021 and January 2022 minimum royalty payments.

4.14.    Notwithstanding its failure to make required royalty payments, High Park continued to use the licensed intellectual property in the distribution and sale of Licensed Products.

4.15.    Further, High Park breached its obligation under the License to use commercially reasonable efforts to maximize sales of Licensed Products in Canada. This includes without limitation:

- failing to develop marketing plans;

- cancelling or abandoning planned marketing campaigns without notice or explanation;

- discontinuing entire categories of products without notice or explanation;

- failing to develop new or updated products or product plans;

- failing to maintain an adequate salesforce; and

- intentionally omitting licensed brands from press releases and marketing materials.

SECOND AMENDED COMPLAINT FOR DAMAGES &
SPECIFIC PERFORMANCE - 6
No. 2:21-cv-01692-TL

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

4.16.   On October 21, 2021, and thereafter Docklight made written requests to High Park/Tilray for monthly sales statements for July, August, and September 2021.  They neither acknowledged the request nor produced the records, until being forced to in discovery in this lawsuit.

4.17.   On October 27, 2021, Docklight made a written demand to High Park/Tilray to open its books and records to inspection by Docklight on or before November 4, 2021.  They again ignored Docklight's request.

4.18.   An October 2021 press release from Tilray regarding a new distribution deal cites each of Tilray's brands but omits any mention of the Licensed Products it is obligated to manufacture, distribute, promote, and sell.

4.19.   When confronted by Docklight over its material breaches, High Park has ignored Docklight's outreach and refused to discuss the matter, citing the same pretext noted above—a need to "review the contract"—and offering vague excuses about supposedly depressed sales of Licensed Products.  High Park has further argued that the negotiations leading to the License may not have been at arm's length.

4.20.   High Park's stated excuses are unavailing.  First, when pressed to provide sales and market information to support its claim regarding flagging sales, High Park offered nothing of substance.  Indeed, High Park has separately breached its express obligation under the License to permit Docklight to inspect its books and records pertaining to its performance under that contract.  Second, at the time the License was negotiated and subsequently amended, it was indisputably done at arm's length.  Third, High Park entered the License aware of the royalty obligation it imposed, and it represented that it had the expertise and experience to evaluate the retail market for cannabis-related products in Canada.  Fourth, Aphria and its management team

SECOND AMENDED COMPLAINT FOR DAMAGES &
SPECIFIC PERFORMANCE - 7
No. 2:21-cv-01692-TL

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

entered into the merger with Tilray and gave Docklight assurances of its commitment to the

License, fully aware of the rights and obligations imposed by that agreement and familiar with

the Canadian market to which it pertained.

4.21.    In addition to the material breaches set forth above, High Park has breached the

License by publicly disclosing the terms and conditions of that agreement.  Specifically, in

multiple public filings with the Securities and Exchange Commission ("SEC") beginning in June

2018, Tilray described the terms and appended unredacted copies of the License, which included

sensitive information such as the royalty rates Docklight agreed to accept from High Park.

**E.     The Harm Resulting from Defendants' Breaches and Misrepresentations**

4.22.    Docklight has been damaged by High Park's breach in in the form of unpaid

guaranteed minimum royalty payments through 2024, lost royalties in addition to those

guaranteed payments, and harm to Docklight's interests as licensee of the Marley brand.

4.23.    The damage to Docklight from High Park's flagrant breach of its confidentiality

obligations remains to be determined but is expected to be substantial.

**F.     Alter Ego Allegations**

4.24.    High Park is and at all relevant times was the wholly owned subsidiary of

Defendant Tilray.  Defendants have admitted that High Park's decision to execute the Second

Amendment and continue with the License was not made by High Park but instead was made by

the management of pre-merger Aphria (now Tilray).  On information and belief, High Park's

decision to stop making payments to Docklight after July 2021 was made by Tilray's senior

management, not High Park's.  Indeed, on information and belief, High Park had no independent

senior management team, but was managed directly by Tilray with respect to the breaches

alleged herein.  For example, in attempting to excuse High Park's late payment of its July 1,

SECOND AMENDED COMPLAINT FOR DAMAGES &
SPECIFIC PERFORMANCE - 8
No. 2:21-cv-01692-TL

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

2021 GMR, Defendants explained that *Tilray's* new management team held up the payment while *it* familiarized itself with the License (months after "High Park" executed that License, presumably after becoming "familiar" with it). As such, Defendants have attempted to excuse their misconduct by asserting that Tilray—not High Park—decides whether and when High Park will abide by the License. And it was Tilray's Chief Operating Officer for Canada, Jim Meiers, who threatened to abandon the License in July 2021 if Docklight did not accede to Tilray's demands to lower High Park's payment obligations. As such, Tilray has disregarded the corporate separateness of High Park such that it is the alter ego of High Park for purposes of Docklight's claims.

## V.  CAUSE OF ACTION – BREACH OF CONTRACT

5.1.    Docklight incorporates the allegations set forth at ¶¶ 1.1 – 4.25 above.

5.2.    Under the License, High Park owed Docklight duties with respect to the manufacture, distribution, promotion, and sales of Licensed products so as to maximize the sales of those products in Canada.

5.3.    Under the License, High Park owed Docklight a duty to make minimum quarterly payments beginning in January 2021 and continuing through December 2024.

5.4.    Under the License, High Park owed Docklight a duty to provide monthly sales statements and to allow Docklight to inspect the books and records of High Park.

5.5.    Under the License, High Park owed Docklight a duty of good faith and fair dealing, which obligated High Park to cooperate with Docklight so that both parties may obtain the full benefit of performance, to remain faithful to an agreed common purpose, and to behave in a manner consistent with Docklight's justified expectations.

SECOND AMENDED COMPLAINT FOR DAMAGES &
SPECIFIC PERFORMANCE - 9
No. 2:21-cv-01692-TL

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

5.6.    Under the License, High Park had a duty to refrain from disclosing the terms of the license to third parties.

5.7.    Docklight faithfully discharged its express and implied duties under the License and has fulfilled any conditions to High Park's performance.

5.8.    As set forth above, High Park has materially breached its express and implied obligations under the License.

5.9.    Docklight has been damaged by High Park's material breaches, in an amount to be determined at trial but which will include expectation damages for High Park's failure to make minimum royalty payments through 2024 and failure to use reasonable efforts to maximize sales of Licensed Products, as well as consequential damages for the lost opportunity to commercialize the Marley brand in Canada as well as damage to Docklight's interests as licensee of that brand.

5.10.    Tilray is liable for High Park's breaches under the doctrine of alter ego liability.

## VI.  REQUEST FOR RELIEF

6.1.    Docklight respectfully requests the following relief:

6.1.1.  Damages in an amount to be determined at trial;

6.1.2.  Attorney's fees and costs as provided under the terms of the License and/or other applicable law;

6.1.3.  Prejudgment interest to the extent permitted by law; and

6.1.4.  Such other and further relief as the Court deems just and proper.

DATED this 19th day of December, 2022.

SECOND AMENDED COMPLAINT FOR DAMAGES &
SPECIFIC PERFORMANCE - 10
No. 2:21-cv-01692-TL

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

**GORDON TILDEN THOMAS & CORDELL** LLP
Attorneys for Plaintiff

By    *s/ Michael Brown*
       Jeffrey M. Thomas, WSBA #21175
       Mark A. Wilner, WSBA #31550
       Michael P. Brown, WSBA #45618
       600 University Street, Suite 2915
       Seattle, Washington 98101
       206.467.6477
       jthomas@gordontilden.com
       mwilner@gordontilden.com
       mbrown@gordontilden.com

SECOND AMENDED COMPLAINT FOR DAMAGES &
SPECIFIC PERFORMANCE - 11
No. 2:21-cv-01692-TL

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477