UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DOCKLIGHT BRANDS INC,

       Plaintiff-Counterclaim Defendant,

    v.

TILRAY INC. and HIGH PARK
HOLDINGS LTD,

       Defendants-Counterclaimants.

CASE NO. 2:21-cv-01692-TL

**ORDER GRANTING IN PART, HIGH PARK'S MOTION TO COMPEL COMPLIANCE WITH DOCUMENT SUBPOENA**

      High Park Holdings, Ltd. ("High Park") moves pursuant to Fed. R. Civ. P. 45(d)(2)(B)(i) for an order compelling Turning Point Brands ("TPB") to comply with a third-party subpoena. Dkt. 98. The parties agree that this District is the place of compliance for the subpoena and this Court is the proper venue for this motion.[1] The motion is granted in part and denied in part.

<u>BACKGROUND</u>

A.    <u>Licensing Agreement Between Docklight and Tilray</u>

      This case concerns a license agreement (the "License") between Docklight Brands, Inc. ("Docklight") and High Park for the manufacture, distribution, and advertising of, among other things, Bob Marley–branded cannabis products in Canada. Dkt. 100, Declaration of Jacob P.

---

[1] The Subpoena as served commands production at the offices of High Park's New York counsel but High Park and TPB have agreed the Subpoena shall be modified to require compliance in Seattle, Washington. Dkt. 100, Freeman Decl. ¶ 19; Ex. A.

ORDER GRANTING IN PART, HIGH
PARK'S MOTION TO COMPEL
COMPLIANCE WITH DOCUMENT
SUBPOENA - 1

1  Freeman, ¶ 6; *see also* Dkt. 1-1 & 66. In an amendment to the License, Docklight granted certain

2  rights to High Park regarding unlicensed products, including an exclusive window for the

3  negotiation of rights to certain products, the right to notice of any efforts to license these

4  products to others, and a Right of First Offer to High Park regarding such products. The Right of

5  First Offer, Section 1.6(f) is at issue in this motion to compel:

6          (f)    Licensor agrees in good faith to keep Licensee *apprised of its*
           *efforts to license* the Licensed Property on, for or *in connection with the*
7          *manufacture, sale, distribution, marketing, advertising and other related activities*
           *for Cannabis Products* that are not Licensed Products ("Other Cannabis
8          Products") in the Territory. The parties agree to discuss in good faith the
           opportunity for license of Other Cannabis Products for a period of ninety (90)
9          days following execution of this Amendment. Thereafter, subject to any
           confidentiality requirements, Licensor *shall provide Licensee an anonymized*
10         *summary term sheet and ten (10) business days to match the terms of any such*
           *proposed license for Other Cannabis Products ("Licensee Offer"), before signing*
11         *a third-party definitive license agreement for the use of the Licensed Property for*
           *Other Cannabis Products*. Licensor may accept or reject Licensee's Offer at its
12         sole discretion.

13  Dkt. 100, Freeman Decl., Ex. E, at 7 (emphasis added.)

14  B.    TPB and Discussions With Docklight

15         TPB distributes and sells smoking accessories and consumables, including cannabidiol

16  ("CBD") products in the United States. In April 2021, TPB announced a strategic investment in

17  Docklight and as part of that investment, TPB obtained the exclusive distribution rights for

18  Marley-branded CBD topical products in the United States (the "U.S. License"). Dkt. 40 at 29-

19  30. TPB and TPB Canada are separate entities that target different marketplaces and offer

20  different products. Dkt. 132, Declaration of Mikail Fancy[2], ¶ 4. TPB is a United States-based

21

22  ───────────────
    [2] Mikail Fancy is the Chief Operating Officer for Turning Point Brands (Canada) Inc. ("TPB
23  Canada"), formerly known as ReCreation Marketing. TPB Canada is the Canadian majority-
    owned subsidiary of non-party TPB. Dkt. 132, Fancy Decl., ¶ 1.

ORDER GRANTING IN PART, HIGH
PARK'S MOTION TO COMPEL
COMPLIANCE WITH DOCUMENT
SUBPOENA - 2

1    manufacturer, marketer, and distributor of branded consumer products with active ingredients.

2    TPB sells a wide range of products in the United States exclusively to adult consumers, including

3    smoking accessories and hemp-based consumables that contain cannabidiol (CBD). *Id.*, ¶ 2. TPB

4    Canada is a specialty marketing and distribution company focused on building brands in the

5    Canadian smoking accessory and vaping market. TPB Canada does not offer any consumables

6    that contain CBD. *Id.*, ¶ 3. TPB Canada is not legally licensed by Health Canada to market,

7    distribute, or sell cannabis in Canada and thus, is not authorized to market, distribute, or sell

8    either CBD or tetrahydrocannabinol (THC) products in Canada. *Id.*, ¶ 4.

9           In the first quarter of 2021, Docklight and TPB Canada engaged in exploratory

10   discussions about distributing Marley-branded products in the Canadian market. Dkt. 132, Fancy

11   Decl., ¶ 4. Those discussions did not result in any licensing offers, term sheets, agreements, or

12   definitive licensing agreements with respect to the Canadian market. *Id*. As of this date, TPB

13   Canada does not have, nor has it ever had, any licensing agreement with Docklight for any

14   Marley-branded products in the Canadian market. *Id.*, ¶ 5.

15          In its Answer to Docklight's Complaint in this case, High Park asserted an Affirmative

16   Defense alleging that Docklight breached Section 1.6(f) of the License because "at no time has

17   Docklight presented High Park with a term sheet, or given High Park a right of first offer, with

18   respect to any expansion or contemplation of expansion of distribution of Marley-branded

19   products into Canada." Dkt. 66 at 31 ¶ 74. This Affirmative Defense is the subject of a pending

20   motion for partial summary judgment filed by Docklight. Dkt. 90. TPB requested the Subpoena

21   be tabled pending a ruling on the motion for partial summary judgment as the ruling could moot

22   the need for the Subpoena. High Park declined the request. Dkt. 131, Buckley Decl., Exs. A, B.

23

ORDER GRANTING IN PART, HIGH
PARK'S MOTION TO COMPEL
COMPLIANCE WITH DOCUMENT
SUBPOENA - 3

1    C.       High Park's Document Subpoena

2         High Park's original document subpoena contained nine Requests for Production

3    ("Requests") and nine "Deposition Topics" relating to a separate subpoena seeking to compel

4    deposition testimony. Dkt. 100, Freeman Decl., Ex. A. After several discussions[3], High Park

5    proposed revising the document subpoena to exclude documents that it could obtain from

6    Docklight, and is limited to documents relating to: (1) High Park and/or Tilray; (2) TPB's

7    contemplated, potential, and/or actual rights with respect to Marley-branded products in Canada;

8    (3) Performance of and value of the Marley brand generally; and (4) TPB's due diligence (or

9    similar) review in connection with its investment in Docklight, limited to Docklight's rights with

10   respect to the Marley brand (including but not limited to Docklight's actual and/or forecasted

11   profits, revenues, obligations, etc., in connection with such rights). Dkt. 100, ¶ 11 & Ex. G. The

12   revised subpoena is hereafter referred to as the "Narrowed Subpoena." TPB did not commit to

13   respond to the proposed Narrowed Subpoena but agreed to consider and continue discussions

14   regarding its scope. Dkt. 131, Buckley Decl., ¶ 6.

15        On October 27, 2022, TPB stated there are no documents reflecting any definitive terms

16   or meaningful discussions between TPB and Docklight, regarding licensing cannabis products in

17   the Canadian market. TPB's diligence materials revealed that TPB did not consider any such

18   licensing opportunities after it became aware of the terms of Docklight's Licensing Agreement

19   with Tilray. TPB offered to produce documents showing that both Docklight and TPB knew that

20   Docklight would be required to check with Tilray before it offered TPB a license for Marley-

21   branded cannabis products in Canada. Dkt. 121, Buckley Decl. ¶ 7. Counsel also discussed

22

23
─────────────────────────
[3] A detailed recitation of counsel's discussion can be found in the parties' filings.

ORDER GRANTING IN PART, HIGH
PARK'S MOTION TO COMPEL
COMPLIANCE WITH DOCUMENT
SUBPOENA - 4

1  whether memorializing these facts (*i.e.*, the absence of any definitive licensing agreement or

2  offer) in a declaration would be the simplest response to the subpoena. *Id.*

3     The next day, High Park's counsel offered to meet and confer with TPB but received no

4  response. Dkt. 100, Freeman Declaration, ¶ 6. On November 3, before TPB produced any

5  documents, High Park's counsel asked TPB's counsel to advise by November 8 whether TPB

6  agreed to search for and produce documents responsive to the four requests comprising the

7  narrowed Subpoena. *Id.*, ¶ 7.

8     On November 4, 2022, TPB produced diligence materials relating to its 2021 investment

9  in Docklight. Dkt. 121, Buckley Decl. ¶ 8. The production included a spreadsheet showing that

10  before Docklight could license Marley-branded CBD to TPB in Canada, Docklight would first

11  "[h]ave to see if Tilray wants" that opportunity. *See id.*, Ex. A, TPB_00000003.

12     On December 2, 2022, High Park alerted TPB it would file a motion to compel. Dkt. 121,

13  Buckley Decl. ¶ 9, Ex. B. A The parties conferred again, on December 5, 2022, but came to no

14  agreement.

15     On December 16, 2022, TPB made a supplemental document production of TPB

16  personnel emails reflecting TPB personnel knew Docklight could not license Marley-branded

17  CBD products to TPB in Canada without first offering that opportunity to Tilray. Dkt. 121,

18  Buckley Decl. ¶ 11; Ex. C (TPB_000000142-44). On December 28, 2022, counsel discussed

19  TPB's email search methodology and file format for its December 16th production. *Id.*

20                                   DISCUSSION

21     It is well-settled in the Ninth Circuit that non-parties subject to subpoena requests deserve

22  extra protection from the courts. *See*, *e.g.*, *Exxon Shipping Co. v. United States Dep't of Interior*,

23  34 F.3d 774, 779 (9th Cir. 1994) ("The Federal Rules … afford nonparties special protection

ORDER GRANTING IN PART, HIGH
PARK'S MOTION TO COMPEL
COMPLIANCE WITH DOCUMENT
SUBPOENA - 5

1  against the time and expense of complying with subpoenas."); *see also United States v.*

2  *Columbia Broadcasting Sys., Inc.*, 666 F.2d 364, 371-72 (9th Cir. 1982) (similar). The Court has

3  liberty and broad discretion to limit discovery to protect non-parties from harassment,

4  inconvenience, or disclosure of confidential information. *See, e.g., Dart Indus. Co., Inc. v.*

5  *Westwood Chem. Co., Inc.*, 649 F.2d 646, 649 (9th Cir. 1980). The Court should keep the

6  "distinction between a party and a nonparty in mind when determining the propriety of a

7  nonparty's refusal to comply with a subpoena by balancing the relevance of the discovery

8  sought, the requesting party's need, and the potential hardship to the party subject to the

9  subpoena." *Venegas v. Southwest Airlines Co.*, No. 07-cv-1259, 2007 WL 9776384, at *1 (W.D.

10 Wash. Sept. 18, 2007) (internal quotations omitted).

11        While the scope of discovery allowed under Rule 45 conceptually is the same as under

12 Rule 26, "restriction[s] may be broader when a nonparty is the target of discovery, in order to

13 protect nonparties from harassment, inconvenience, or disclosure of confidential documents."

14 *Dominguez v. Corp. of Gonzaga Univ.*, 2018 WL 3338181, at *1 (E.D. Wash. Apr. 19, 2018)

15 (internal quotations omitted). For a non-party, "[t]he compulsion of production of irrelevant

16 information is inherently an undue burden."

17        Discovery requests must accordingly be "tailored with some particularity to the relevant

18 information that the requesting party hopes to gain." *Rollins v. Traylor Bros.*, No. C14-1414JCC,

19 2017 WL 1756576, at *2 (W.D. Wash. May 5, 2017). "The party who resists discovery has the

20 burden to show that discovery should not be allowed, and has the burden of clarifying,

21 explaining, and supporting its objections" with competent evidence. *Doe v. Trump*, 329 F.R.D.

22 262, 270 (W.D. Wash. 2018) (quoting *Blemaster v. Sabo*, No. 2:16-CV-04557 JWS, 2017 WL

23 4843241, at *1 (D. Ariz. Oct. 25, 2017)).

ORDER GRANTING IN PART, HIGH
PARK'S MOTION TO COMPEL
COMPLIANCE WITH DOCUMENT
SUBPOENA - 6

1    A.      <u>Impasse Between Parties Prior to Filing Motion to Compel</u>

2        TPB contends High Park's motion to compel is premature because the parties had not yet

3 reached an impasse in their discussions. High Park asserts the parties have been at an impasse

4 since at least November 8 – when TPB failed to agree to search for and produce documents

5 responsive to the Narrowed Subpoena. However, the record does not reflect that the parties ever

6 agreed to the scope of the Narrowed Subpoena. TPB asserts that the parties were not at an

7 impasse because High Park never raised any issues relating to TPB's November 4 document

8 production and the parties never resolved whether a declaration from TPB would be useful or

9 necessary.

10        A motion to compel is premature when the parties have not yet reached an impasse with

11 respect to outstanding discovery disputes. *See Advanced Hair Restoration, LLC v. Hair*

12 *Restoration Centers, LLC*, No. C17-709RSM, 2018 WL 828213, at \*2 (W.D. Wash. Feb. 12,

13 2018) (denying motion to compel where "[t]here is no evidence that the parties reached an

14 impasse in their discussions" and defendant was "attempting in good faith to resolve the

15 discovery dispute outside of Court by producing the requested records").

16        High Park argues TPB is engaging in delay tactics and that High Park has repeatedly met

17 and conferred to resolve this dispute. However, the record reflects TPB also repeatedly met and

18 conferred to narrow the scope of the Subpoena, produced responsive documents, and offered

19 declaratory evidence to resolve the dispute. The record does not reflect bad faith or delay tactics

20 but rather, reflects a good faith effort to resolve the issue short of Court involvement. In fact, the

21 parties left several items for discussion on the table, *i.e.*, whether TPB's November 4 production

22 negated the need for this motion (at least in part); and whether a declaration from TPB

23 memorializing the absence of any definitive licensing agreement, offer, or extracontractual

ORDER GRANTING IN PART, HIGH
PARK'S MOTION TO COMPEL
COMPLIANCE WITH DOCUMENT
SUBPOENA - 7

1   agreement between Docklight and TPB negated the need for this motion.

2         High Park argues its motion does not concern what TPB has "unilaterally decided to

3   produce, but instead what it has refused to disclose." High Park also alleges that TPB

4   acknowledges that its productions to date represented "a reasonable response" to the document

5   requests, not an exhaustive one. Dkt. 137, Freeman Reply Decl, ¶ 12.

6         Based on the escalating tone of the parties' filings and communications, the Court

7   concludes that further negotiation is futile.

8   B.      Merits of Motion to Compel on Narrowed Subpoena

9         High Park contends each of the categories of documents contained in the Narrowed

10  Subpoena are relevant to its counterclaim and affirmative defense that Docklight breached

11  Section 1.6(f) of the Licensing Agreement. However, in its Response to Docklight's Motion for

12  Partial Summary Judgment, High Park argues that it essentially seeks confirmatory discovery

13  from TPB merely to "test … whether extra contractual representations were made from

14  Docklight to TPB or others, in an attempt to avoid documentation triggering" Docklight's

15  Section 1.6(f) obligations. Dkt. 103 at 11. The record reflects no such agreement (whether "extra

16  contractual" or otherwise) between Docklight and TPB exists and TPB, through its Canadian

17  subsidiary, is not authorized to market, sell, or distribute cannabis products in Canada. Dkt. 132,

18  Fancy Decl. ¶¶ 3, 5.

19        The Court turns to the specific categories of the Narrowed Subpoena:

20        1.      *TPB's documents discussing High Park or its parent, Tilray, Inc.*

21        High Park argues these documents are relevant to show the extent to which TPB and

22  Docklight were aware of High Park's exclusivity period and right of first offer with respect to the

23  Canadian market and whether Docklight knowingly violated Section 1.6(f), which requires

ORDER GRANTING IN PART, HIGH
PARK'S MOTION TO COMPEL
COMPLIANCE WITH DOCUMENT
SUBPOENA - 8

1   Docklight to act "in good faith."

2   First, because High Park seeks information relating to its "right of first offer with respect

3   to the Canadian market," this category of documents should be limited to the Canadian market

4   and/or the specific factual claims at issue (Marley-branded cannabis products).

5   Second, the documents produced by TPB show that TPB and Docklight were aware of

6   High Park's rights under its Licensing Agreement with Docklight. Dkt. 131, Buckley Decl., Ex.

7   A, TPB_00000003; Ex. C, TPB_00000142; *see also* Dkt. 100, Freeman Decl. Ex. I,

8   (DOCK002673).

9   The Court **denies** High Park's motion to compel further response to this category of

10  documents.

11              2.      *TPB's documents regarding its contemplated, potential, or actual rights
                        with respect to Marley-branded products in Canada*

12

13  High Park argues the documents in this category would tend to show if Docklight

14  breached the License by offering such rights to TPB and if Docklight made any side

15  representation to TPB about the possibility of such licensing, which was not included in a final

16  written agreement. High Park also contends the documents may show Docklight took measures

17  in bad faith to avoid alerting High Park to its negotiations with TPB.

18  The documents and declaratory evidence produced by TPB reflect Docklight never

19  offered TPB a definitive license agreement for Marley-branded cannabis products in Canada;

20  TPB is not authorized to market, sell, or distribute cannabis products in Canada; and evidence of

21  TPB's internal understanding of its "contemplated, potential, and/or actual rights" to Marley-

22  branded CBD products in Canada has been produced by Docklight (DOCK002673) and by TPB

23  (TPB_00000003; TPB_00000142). These documents reflect TPB was aware of High Park's

ORDER GRANTING IN PART, HIGH
PARK'S MOTION TO COMPEL
COMPLIANCE WITH DOCUMENT
SUBPOENA - 9

1  rights under Section 1.6(f) and was aware Docklight could not license Marley-branded CBD

2  products to TPB in Canada without first offering that opportunity to Tilray.

3       High Park argues that "TPB's self-serving and undocumented assertion that it made no

4  deal with Docklight regarding Canada does not prove that fact—that is what discovery is for."

5  Dkt. 136, p. 6. High Park ignores the declaration of TPB's Chief Operating Officer Mikail Fancy

6  stating that the brief exploratory discussions between Docklight and TPB Canada about

7  distributing Marley-branded products in the Canadian market did not result in any licensing

8  offers, term sheets, agreements, or definitive licensing agreements with respect to the Canadian

9  market and that TPB Canada does not have, nor has it ever had, any licensing agreement with

10  Docklight for any Marley-branded products in the Canadian market. Dkt. 132, Fancy Decl., ¶¶

11  4,5.

12       The Court **denies** High Park's motion to compel further response to this category of

13  documents.

14         3.     *TPB's documents regarding the performance and value of the Marley*
                *brand generally.*

15

16         4.     *TPB's due diligence review of Docklight with respect to the Marley brand*
                *(actual and/or forecasted profits, revenues, obligations).*

17       High Park broadly asserts TPB's internal documents on these issues (if any) are relevant

18  to "claims and defenses by both sides concerning whether a decline in sales of Marley-branded

19  products in Canada was attributable to High Park's acts or omissions, problems with the Marley

20  brand generally, or other causes." Dkt. 98, at 7-8.

21       High Park points to evidence of TPB's exploratory discussions with Docklight about the

22  Canadian market in early 2021 (Dkt. No. 103, Ex. 23 (DOCK005301)) and a March 2021 slide

23  deck about the TPB/Docklight investment, which refers to the possibility of TPB's Canadian

ORDER GRANTING IN PART, HIGH
PARK'S MOTION TO COMPEL
COMPLIANCE WITH DOCUMENT
SUBPOENA - 10

1    arm, ReCreation Marketing, "enter[ing] into licensing agreement for exclusive use of Marley

2    brand for CBD products in Canada." Dkt. 100, Freeman Decl., Ex. H (TPB_00000073–77). TPB

3    states this was merely an internal exploratory document to see if TPB's Canadian subsidiary had

4    the network and capability to distribute or sell Marley-branded cannabis products but because

5    TPB's Canadian subsidiary is not authorized to distribute or sell cannabis in Canada, TPB and

6    Docklight never agreed on any terms for any license for any product in Canada. TPB also states

7    that it has made a diligent search and has produced what it has been able to locate. The

8    exploratory discussions between TPB and Docklight are at issue and may be relevant to High

9    Park's Section 1.6(f) breach-of-contract claim.

10           The Court **grants** High Park's motion to compel further response to these two categories

11   of documents. TPB should state whether it performed a due diligent review of the performance

12   and value of the Marley brand generally and specifically as to Docklight's actual and/or

13   forecasted profits, revenues, and obligations as to the Marley brand. If it performed a due diligent

14   review, TPB should produce documents related to its review or state that it has no such

15   documents, or identify the documents already produced satisfying these requests. TPB is

16   **ORDERED** to provide its response and documents, if any, to these category of documents

17   within ten (10) days of this Order.

18           DATED this 30th day of January, 2023.

19

20                                                    _____
                                                      BRIAN A. TSUCHIDA
21                                                    United States Magistrate Judge

22

23

ORDER GRANTING IN PART, HIGH
PARK'S MOTION TO COMPEL
COMPLIANCE WITH DOCUMENT
SUBPOENA - 11