UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DOCKLIGHT BRANDS INC,<br><br>    Plaintiff-Counterclaim Defendant,<br><br>    v.<br><br>TILRAY INC. and HIGH PARK HOLDINGS LTD,<br><br>    Defendants-Counterclaimants. | CASE NO. 2:21-cv-01692-TL<br><br>**ORDER REGARDING JOINT LCR 37 SUBMISSION (DKT. 138)** |

On January 23, 2023, the parties filed a joint LCR 37 Submission Regarding Defendants' Responses to Plaintiff Docklight Brands, Inc.'s Discovery Requests directed to Defendant High Park Holdings. Dkt. 138. Docklight's motion to compel is granted in part and denied in part.

## **BACKGROUND**

This lawsuit arose from Defendants' alleged failure to pay more than one million dollars pursuant to a License under which Docklight licensed the Marley brand and other intellectual property to Defendants in exchange for a Guaranteed Minimum Royalty ("GMR") based on sales of Licensed Products. Defendants allege they were permitted to stop paying the GMR in October 2021 because sales of Licensed Products had declined to the point where the GMR was "uneconomic." Defendants contend the decline in sales was due, in large part, to the de-listing of certain Licensed Products by provincial boards governing cannabis sales.

Docklight contends the discovery at issue in this motion seeks basic information to evaluate and respond to these core contentions. Defendants contend they have already responded

to multiple interrogatories and produced thousands of pages of documents relating to the decline in sales and in support of their claim the GMR was uneconomic and did not reflect an arms'-length agreement as required by Section 8.8 of the License Agreement.

## **DISCUSSION**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Under Rule 26, the concept of relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

If the parties are unable to resolve their discovery issues, the requesting party may move for an order to compel. Fed. R. Civ. P. 37(a)(1). The parties have met and conferred but were unable to resolve the following discovery issues:

A.  <u>Interrogatory No. 25 to High Park</u>

> Explain in detail the standard(s) by which you contend the GMR should have been evaluated under Section 8.8 of the License Agreement to determine whether the GMR reflected "the arm's length value of the rights granted" under the License Agreement, and identify all material facts and all documents supporting your contention that the GMR did not meet that standard: (a) at the time the First Amendment was executed; (b) at the time the Second Amendment was executed; and (3) at any time thereafter.

High Park does not dispute the discovery sought in Interrogatory No. 25 is relevant and explains, "based on information already produced by Defendants", it "is clear that under any standard the GMR was not "arm's-length"; no party would agree to an advance payment . . . that was significantly more than the actual payment due." Dkt. 138 at 8. Defendants asserted in pleadings and sworn discovery responses that the GMR was not "arm's length" as that term appeared in Section 8.8. *See, e.g.*, Dkt. 66 at 29 ¶ 62. However, High Park contends Defendant

Tilray has already answered this query in an interrogatory addressed to Tilray and it should not have to provide expert testimony or investigative information. Dkt. 138 at 7 n.4.

**Court's Order:** Docklight's motion to compel further response to Interrogatory No. 25 is **granted**. There is no question the information Docklight seeks is relevant to High Park's claim the GMR did not reflect "the arm's length value of the rights granted" under the License Agreement. High Park had a contention as to what "arm's length" means and how the GMR was to be evaluated at least as of mid-2021. High Park must respond to this interrogatory fully and completely to the best of its knowledge, based on the information it has to date. *Beeman v. Anthem Prescription Management, Inc.*, 2017 WL 5564535, at *4 (C.D. Cal. Nov. 17, 2017). High Park may not respond to discovery requests directed to it by referencing discovery responses provided by another party; instead, it must submit its own answer, under oath. If it has no further factual information (independent of any expert investigation), it should state this under oath as well.

High Park also argues that the motion to compel further response to this interrogatory should be denied because Docklight "has already served over 25 interrogatories on High Park. Dkt. 138 at 8. However, High Park did not object to this interrogatory on that ground. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1991) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection.") (citation omitted), *cert. dismissed*, 506 U.S. 948 (1992).

B.  <u>Interrogatory No. 23 to Tilray</u>

> Please explain in detail all the reasons for the significant decline in sales of Licensed Products in or around the first quarter of calendar year 2021. If your response includes a reference to product delistings, please identify: (a) each delisted product; (b) the date of delisting; (c) the entity that delisted the product; (d) the reason(s) for the delisting; (e) the quantity of sales of that product for the six months before and the six months after the delisting.

<u>Tilray's Amended Response</u>:

In or around the first quarter of calendar year 2021, Marley Natural products experienced significant challenges, including but not limited to: price deflation in the market; government stay-at-home orders in response to the COVID-19 pandemic; increased competition in flower quality and potency; high prices for Marley Natural vapes versus the competition; limited Marley Natural vape flavors and formats compared to the competition; and the de-listing of certain Marley Natural products by certain provincial licensing boards.

<u>COVID-19 Stay-At-Home Orders</u>: Relevant stay-at-home orders include but are not limited to stay-at-home orders issued by Ontario under the Emergency Management and Civil Protection Act, including but not limited to O. Reg. 11/21.

<u>Competitors</u>: The following recreational adult-use cannabis products competed with Marley Natural products at the relevant time in terms of similar marketing claims as to quality and price: Grail; Houseplant; and 7 Acres.

<u>De-Listings</u>: The Ontario Cannabis Store delisted all Marley Natural vapes on or about January 12, 2021 due to unsatisfied sales criteria. British Columbia Liquor Distribution Branch delisted all Marley Natural vapes on or about February 19, 2021 at British Columbia Cannabis Stores due to slow unit sales and assortment space pressure, and on or about February 24, 2021 at wholesale stores due an unacceptable rate of sales. Cannabis New Brunswick delisted all Marley Natural vapes on or about March 15, 2021 due to SKU rationalization. Pursuant to Rule 33(d), Tilray directs Docklight to the following documents: TILRAY-0000002; TILRAY-0003274 through TILRAY-0003306.

At issue here are the documents to which Tilray refers, *i.e.*, a spreadsheet containing 29 columns and 30,000 rows of data (*see* Dkt. 139, Brown Decl., Ex. D). The spreadsheet produced at TILRAY-0000002 provides, for each order, the invoice date (column C), customer name (column J), invoice transaction description of the product (column L), and shipment and invoice quantities (columns Q and R). The dates of relevant de-listings are contained in the listing trackers produced at TILRAY-0003274 – 0003306. *See* 139, Brown Decl., Ex. C at 13 (explaining the listing trackers and how to sort them). Tilray explains it provided a larger range of documents supporting these entries in response to Docklight's speculation the dates in the listing trackers could be incorrect, *see id.* at 13 (question 4). Dkt. 138 at 20.

ORDER REGARDING JOINT LCR 37
SUBMISSION (DKT. 138) - 4

Docklight argues Tilray improperly relies on Rule 33(d) in providing its compilation of sales data because (1) providing a response would not be burdensome; (2) the spreadsheet does not include dates of relevant de-listings; (3) such reliance is improper in responding to a "contention" interrogatory; and (4) the sales data compilation is not a business record but was generated in response to a discovery request. Finally, Docklight questions the completeness of Tilray's answer as to the de-listing entity who included "assortment space pressure" as a response.

**Court's Order:** Docklight's motion to compel further response to Interrogatory No. 23 is **denied**. Tilray's reliance on Rule 33(d) is not improper because compiling, abstracting or summarizing a party's business records in response to a discovery request is permitted by the rule and Docklight has not shown how Tilray's use of this rule is somehow inadequate or that the information is too difficult to extract. *See e.g.*, *Dibbs v. The Franklin Mint*, No. 06-0604, 2007 WL 4327876, at *1 (W.D. Wash. Dec. 10, 2007) (citing 33 Moore's Federal Practice-Civil ¶ 33.105); *Bite Tech, Inc. v. X2 Biosystems, Inc.*, No. C12-1267-RSM, 2013 WL 12191342, at *2 (W.D. Wash. May 13, 2013). At most, it appears that the time and cost burden of perusing the spreadsheets and/or filtering the data (with the data filtering instructions provided by Tilray) is essentially the same for Docklight as it is for Tilray. *See Dibbs*, 2007 WL 4327876 at *1 (Noting, the purpose of Rule 33(d) is specifically to "shift the time and cost burden, of perusing documents in order to supply answers to discovery requests, from the producing party to the party seeking the information.")

Similarly, Tilray sufficiently responded as to the dates of the relevant de-listings by identifying the listing trackers (TILRAY-0003274 – 0003306). *See* Dkt. 139, Brown Decl., Ex. C at 13 (explaining listing trackers and how to sort them).

As Tilray relied upon Rule 33(d) only to respond to the independent subpart of the interrogatory asking for "the quantity of sales" for each delisted product, Docklight's concern that Tilray improperly relied on Rule 33(d) in responding to a contention interrogatory is unwarranted. Moreover, the interrogatory asks for "all of the reasons for the significant decline in sales of Licensed Products in or around the first quarter of calendar year 2021." Tilray's response in this regard is sufficient as it identified the material reasons it contends sales declined: price deflation, government stay-at-home orders, increased competition, high prices, limited flavors and formats, and de-listings.

Docklight also questions the completeness of Tilray's answer as to "the entity that delisted the product" and "the reason(s) for the delisting." One de-listing entity included the phrase "assortment space pressure" in its reason for de-listing. Tilray appropriately responded to this interrogatory by providing Docklight with the name of the entity and the reason given by that entity. Tilray is not obligated to provide a further explanation of what *it* understands what the de-listing entity meant in using the phrase.

C.      Interrogatory No. 26 to High Park

> State all material facts that support or otherwise relate to these recent representations by Irwin Simon regarding the value of the Marley brand: (1) his statement during Tilray's July 29, 2022 earnings call that the Marley brand "was almost a $30 million business," and (2) his statement during Tilray's October 7, 2022 earnings call that "by taking strains out of the market by eliminating the Marley brand, it's worth for us about $30 million, $40 million."

High Park's Response

High Park raised several objections including that this interrogatory exceeds Rule 33's 25-interrogatory limit. High Park also argues that Docklight routinely served interrogatories with multiple subparts so that the actual number of interrogatories served prior to Interrogatory No. 26 far exceeded the 25-limit.

Docklight concedes it has exceeded the 25 interrogatory limit and argues that the additional interrogatory is appropriate because all the relevant factors weigh decisively in favor of requiring High Park to respond. Dkt. 138 at 23-24. Docklight also asks the court to "credit" eleven of its first 25 interrogatories because they were aimed at defeating Defendants' "baseless counterclaims for fraud and fraudulent inducement." Docklight argues High Park is improperly asking the Court to go back through all prior interrogatories in this case – to which Defendants made no "25-limit" or "subpart" objections – and recharacterize them.

**Court's Order**: Docklight's motion to compel a response to Interrogatory No. 26 is **denied**. The Court need not wade through all prior interrogatories to determine if Docklight has exceeded Rule 33's limit to resolve this dispute as this is clearly, at the very least, Docklight's 26th interrogatory to High Park. Moreover, Docklight concedes it has exceeded the limit as it now asks the Court to exercise its authority to allow the additional interrogatory because it seeks "critical information" contradicting High Park's position in this case. The established law in this district makes clear Docklight "is not entitled to compel [Defendants] to answer more than 25 interrogatories without leave of Court." *See, e.g.*, *Pendleton v. Jordan*, 2021 WL 3572697, at *2 (W.D. Wash. May 28, 2021). The limitation on interrogatories is "based on the recognition that, although interrogatories are a valuable discovery tool, 'the device can be costly and may be used as a means of harassment ….'" *Montar-Morales v. Pickering*, 2021 WL 4851033, at *1 (W.D. Wash. Sept. 13, 2021).

Docklight's motion to compel a response to Interrogatory No. 26 prior to seeking and obtaining leave of Court is, therefore, procedurally improper. *See Pendleton*, 2021 WL 3572697, at *2 (denying motion to compel response to 26th interrogatory because "once Plaintiff received Defendant's objection he should have sought leave of court to serve [Defendant] with additional

interrogatories, which would have permitted this Court to evaluate … whether good cause merited requiring [Defendant] to respond."

Docklight's request that it be given "credit" for interrogatories "aimed at defeating" counterclaims in a motion to dismiss is also rejected. Docklight provides no factual or legal basis for such a request.

D.      Request for Production No. 22 to High Park (Third Set)

> Produce all documents related to the delisting, from October 2020 through February 2022, of any inhalable adult use recreational cannabis product distributed or sold in Canada by Old Tilray, High Park, Aphria, or New Tilray

High Park's Amended Response:

> High Park has agreed to produce documents in its custody or control related to delistings of inhalable adult use recreational cannabis products distributed or sold in Canada by Old Tilray, High Park, and New Tilray for the period January 2020 through April 2022. High Park does not agree to obtain and produce documents related to delistings of inhalable adult use recreational cannabis products distributed or sold by Aphria because the burden of obtaining and producing such documents far outweighs their relevance (which is non-existent).

Dkt. 139, Brown Decl., Ex. C at 15.

**Court's Order:** Docklight's motion to compel further response to Request for Production No. 33 with respect to pre-merger Aphria product is **granted** as the information either bears on, or reasonably could lead to other matter that could bear on, the de-listing issue.

High Park does not dispute documents relating to de-listing of products manufactured by Defendants may be relevant and have agreed to produce documents related to products sold by Old Tilray, High Park, and New Tilray (to include former-Aphria products that post-merger Tilray has continued to manufacture). High Park argues documents relating to pre-merger Aphria products (that post-merger Tilray no longer manufactures) are not relevant and will provide no useful comparison of whether pre-merger Aphria favored its products over Docklight products

because Aphria was an entirely different entity, manufacturing a different mix of products, using different personnel, with no license to manufacture Marley products.

However, it is undisputed Aphria exerted control over High Park's business decisions relating to the License in the months leading to the May 1, 2021 merger with Tilray during the time period in which the delistings took place. A sales forecast document also reflects that, as early as August 2020, Defendants were tracking sales forecasts for Aphria products and Marley-branded products on the same spreadsheet and the same Demand Planner was used for Licensed Products and competing Aphria products. Dkt. 139, Brown Decl., Ex. F ("Sales Forecast Alignment" tab, examples of relevant entries highlighted) and *id*. at Column Q.

Accordingly, it is **ORDERED**:

1. Docklight's motion to compel further response to Interrogatory No. 25 to High Park and Request for Production No. 22 to High Park are **granted**.

2. Docklight's motion to compel further response to Interrogatory No. 23 to Tilray and Interrogatory No. 26 to High Park are **denied**.

3. It is further **ORDERED** that High Park shall provide responses to Interrogatory No. 25 and documents responsive to Request for Production No. 22, consistent with this Order, to Docklight within **ten (10) days** of the date of this Order.

DATED this 7th day of February, 2023.

BRIAN A. TSUCHIDA
United States Magistrate Judge