UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DOCKLIGHT BRANDS INC,

        Plaintiff,

v.

TILRAY INC. and HIGH PARK HOLDINGS LTD,

        Defendants.

CASE NO. 2:21-cv-01692-TL

**ORDER GRANTING MOTION TO AMEND SCHEDULING ORDER AND FILE THIRD AMENDED COMPLAINT**

Plaintiff Docklight Brands, Inc. ("Docklight") moves to amend the Scheduling Order and to amend its Complaint after expiration of the deadline to amend pleadings. Dkt. 152. Defendants Tilray Inc. ("Tilray") and High Park Holdings Ltd. ("High Park") oppose the amendments. Dkt. 155. Having reviewed the motion, opposition, reply (Dkt. 161) declarations, and balance of the record, the Court grants the motion.

RELEVANT FACTS

Docklight obtained its right to the Bob Marley brand through a 2016 agreement (the "Marley License") with Marley Green LLC, which is owned by the Estate of Bob Marley ("Marley Estate"). The Marley License granted Docklight an exclusive worldwide sub-licensable right and license to distribute any Bob Marley-branded cannabis products. Docklight sub-licensed a portion of its rights to distribute certain Marley-branded cannabis products in Canada to Defendant High Park through a 2018 license agreement (the "License"). Canada is the critical

1  source of Docklight's licensing revenue (as well as Tilray's recreational cannabis revenue) as
2  Canada is the only country in the world that permits the nationwide commercial production and
3  sale of cannabis products for recreational purposes and permits national banking and other
4  financial services for the industry. Dkt. 158, Marano Reply Decl., ¶ 3.

5  Under the Marley License, Docklight owed the estate a GMR of $4 million in 2022 and
6  $5 million in 2023. Defendants were aware, when they agreed to their GMR obligation to
7  Docklight in 2020, that Docklight depended on receiving Defendants' GMR payments to make
8  its own payments to the Marley Estate. *See* Dkt. 159, Brown Reply Decl., Ex. A (August 10,
9  2020 email to Tilray's CEO and General Counsel – "As you know, the near constant High Park
10 royalty late payments puts significant financial strain on Docklight - we must pay the Marley
11 family on time at the end of every quarter.")

12 Docklight began under-paying on its GMR obligation to the Marley Estate in 2022. The
13 Marley Estate understood this was due to Tilray's failure to pay Docklight a GMR, and it was
14 willing to work with Docklight to try to manage the situation without terminating Docklight's
15 rights to the Marley brand and starting from scratch with a new licensee. Dkt. 158, Marano
16 Reply Decl., ¶ 2. Throughout 2022 and early 2023, Docklight and the Marley Estate engaged in
17 discussions and Docklight made partial payments on its obligations, The Marley Estate allowed
18 the Marley License to continue in force in this manner for over a year.

19 When Docklight filed its First Amended Complaint (on December 10, 2021), it included
20 the allegation, "Docklight remains obligated to pay-and has continued to pay-its minimum
21 royalties to Marley Green under the Marley License." Dkt. 1 ¶ 4.35. Docklight did not plead any
22 compensable damages resulting from that obligation (*id*. ¶ 5.9) and did not identify any damages
23 in its Initial Disclosures. Dkt. 152, Declaration of Michael P. Brown, Ex. A at 8.

1   Defendants served discovery on Docklight as to its contractual relationship with the
2   Marley Estate. Docklight objected to the discovery because, although its contractual obligations
3   were mentioned in its Complaint, its agreement and relationship with the Marley Estate was not
4   legally relevant to its claims or Defendants' claims. Dkt. 75 at 12. On September 6, 2022, the
5   Court ordered Docklight to respond to High Park's RFP No. 3, which asked for "[d]ocuments
6   sufficient to show all payments by Docklight pursuant to the Marley License." Dkts. 83, 86.

7   On September 19, 2022, Docklight proposed an amended complaint to remove the
8   allegation related to the Marley Estate, and asked Defendants if they would stipulate to its filing.
9   Dkt. 153, Brown Decl., Ex. B. After discussions, Docklight sent another email on November 22,
10  2022, with an updated version of its proposed amended complaint. *Id*., Exs. C & D. Docklight
11  sent another revised version on December 5, along with a draft stipulation. *Id*., Ex. E. On
12  December 6, 2022, Docklight responded to Defendants' question regarding the intent behind the
13  amendments, stating: "Docklight does not intend to rely on those facts [its obligations to the
14  Marley Estate] to support its claims or defenses and does not believe they are relevant, *at least as*
15  *the case now stands*." *Id*. (Emphasis added.) Defendants agreed to the stipulation and
16  amendment, and Docklight filed both on December 7, 2022. Ex. F; Dkt. 109 (the "Stipulation").
17  Defendants included a proviso in the Stipulation that they were not treating Docklight's
18  amendment as having "any impact on the proper scope of discovery." Dkt. 109 at 1.

19  Docklight received the Marley Estate's official notice of termination "effective
20  immediately" on April 18, 2023. Declaration of Damian Marano, ¶ 2 & Ex. A. On April 11,
21  2023, Docklight had informed Defendants it had learned its rights under the Marley License
22  were being terminated and Docklight intended to seek damages arising from that termination.
23  Dkt. 153, Brown Decl., ¶ 8. Docklight explained that its new damages include revenues

1  Docklight will lose by being forced to terminate sublicenses with other third parties for the sale
2  of Marley-branded products in Canada, the U.S., and overseas, as well as revenues it expected to
3  earn from its own sale of Marley-branded products. *Id*. None of Defendants' four attorneys on
4  that call— including those most involved with the December Stipulation—said anything about
5  an earlier commitment by Docklight not to seek these damages. Dkt. 153 at 2 ¶ 10. Instead,
6  Defendants suggested it was not necessary for Docklight to amend its Complaint but could
7  simply update its Initial Disclosures and other relevant discovery responses. *Id*. Docklight agreed
8  that approach would be more efficient. *Id*.

9  　　On April 20, 2023, Docklight and Defendants engaged in an unsuccessful mediation. On
10 April 21, 2023, Docklight asked Defendants to confirm their prior position that no amendment
11 was necessary to add the new damages claim. Dkt. 153, Brown Decl., Ex. G at 2. On April 24,
12 2023, Defendants stated they did not agree Docklight could seek consequential damages based
13 on harm to the Marley Estate, the Marley Brand, or harm caused to Docklight by virtue of
14 Docklight's obligations to the Marley Estate. Defendants contend Docklight had "expressly
15 disclaimed those damages in [its] email dated Nov. 4, 2022, when you secured Defendants'
16 assent to the [S]tipulation to amend your complaint on the basis that, among other things, you
17 planned to amend to "[c]larify that we do not seek damages or any other remedy for harm to the
18 Marley Estate's interest in the Marley brand or damages for harm caused to Docklight by virtue
19 of Docklight's continued obligation to the Estate." *Id*. at 1. However, on December 6, 2022,
20 Docklight explained that it did "not intend to rely on those facts to support its claims or defenses
21 and does not believe they are relevant, at least as the case now stands. *Id*., Brown Decl., Ex F at
22 2; Ex. H (emphasis added).
23

On October 25, 2022, Docklight responded to RFP 3 by producing the Marley License which sets forth the GMR Docklight was required to pay to the Marley Estate ($1 million per quarter in 2022); and a table showing Docklight had failed to make its $1 million quarterly payments to the Marley Estate for the first, second, and third quarters of 2022 (it paid just $250,000, $564,000, and $265,000, respectively). Dkt. 159, Brown Reply Decl., Exs. B, C, D, and E.

The factual basis for Docklight's claim related to the Marley License is set forth at ¶ 4.23 of Docklight's proposed Third Amended Complaint:

> On April 18, 2023, the Marley Estate terminated the license agreement under which Docklight held the rights to the Marley brand that it licensed to Defendants in Canada and to other sublicensees in the U.S. and globally, and pursuant to which it developed and sold other Marley-branded products itself. The cause for that termination was Docklight's inability to pay the $4 million - $5 million GMR obligation it owed under the Marley license, which inability resulted proximately from Defendants' refusal to make their GMR payments to Docklight beginning in October 2021. At the time they promised to pay the GMR, Defendants were well aware Docklight depended on those revenues to make its own upstream GMR payments to the Marley Estate (they were explicitly reminded of this in an email at around the time the parties began negotiating the GMR in the fall of 2020), and that the revenues it earned from the High Park License comprised the majority of all of its revenues from all operations. As such, it was clearly within the contemplation of the parties that Defendants' refusal to pay the GMR (or any royalties) to Docklight would destroy Docklight's ability to retain its rights to the Marley brand—which rights it expected to retain through 2044—and as such cause harm to Docklight in addition to the revenues it would lose by virtue of not receiving payments under the High Park License. Docklight has been and will continue to be damaged by virtue of its loss of rights to the Marley brand, in an amount to be determined at trial and reflecting its loss of existing revenue sources as well as additional sources it could and would have developed.

*See* Dkt. 152, Appendix A.

## DISCUSSION

A.  Good Cause to Amend Scheduling Order After Deadline

A motion for leave to amend that is filed after the cut-off date for amendment set forth in

- 5

a scheduling order, is governed by Rule 16(b). *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608-09 (9th Cir. 1992). The scheduling order may be modified for "good cause." Fed. R. Civ. P. 16(b)(4). Under Rule 16(b), the "good cause" standard "primarily considers the diligence of the party seeking the extension." *Johnson*, 975 F.2d at 609.

Defendants argue Docklight cannot satisfy Rule 16's diligence requirement because it sought this amendment 17 days after the scheduling order deadline. They argue Docklight knew it was in breach of the Marley License in December 2022 when filed its Second Amended Complaint sans its obligations to the Marley Estate and, when it received a notice of intent to terminate and opportunity to cure from the Marley Estate on February 14, 2023.

However, Docklight did not have a claim for damages for loss of its rights to the Marley brand until its actual loss of those rights was certain (not just "probable"). *See In re Multidistrict Vehicle Air Pollution*, 591 F.2d 68, 72-73 (9th Cir. 1979) (plaintiff had a claim for damages already suffered but not for future damages if it is uncertain whether it will suffer that future harm; "[i]n these instances, *the cause of action for future damages, if they ever occur, will accrue only on the date they are suffered*") (emphasis added); Restatement (Second) Contracts, § 344 (contract law "excludes those elements of loss that cannot be proved with reasonable certainty"). The record reflects that the Marley Estate was working with Docklight to find a solution that did not involve revoking Docklight's rights and these efforts continued after the February 14th letter and cure period and were not abandoned until early April, 2023. Dkt. 158, Marano Reply. Decl., ¶ 2. Docklight promptly arranged a call with Defendants to inform them of this development and ask for their consent to this amendment. Dkt. 153 at 2 ¶ 8. Docklight filed this motion a few days after the parties' meet-and-confer proved fruitless. Thus, Docklight acted with diligence. *See Hood v. Hartford Life*, 567 F.Supp.2d 1221, 1225-26 (E.D. Cal. 2008)

(diligence found where basis for additional damages was not known until after deadline to amend and, once it became apparent, "plaintiff promptly requested defendant stipulate to adding the additional claim for damages" and when defendants refused "plaintiff quickly filed the present motion for leave to amend.") Indeed, had Docklight made a claim for damages before it was certain it had lost its rights to the Marley brand, Defendants could have argued they were not recoverable unless and until Docklight suffered that loss.

The current deadline to amend pleadings was March 23, 2023. Dkt. 146. Docklight did not suffer the loss of its rights to the Marley brand until after March 23, 2023, and promptly brought this motion after Defendants stated their opposition. *See Bear, LLC v. Marine Group Boat Works, LLC*, 2016 WL 3667152, at *2 (S.D. Cal. July 11, 2016) ("The Court finds that there is 'good cause' for modifying the scheduling order. Plaintiff seeks to amend the Complaint based on facts that it discovered after the motion cut-off date.") (citing *Johnson*, *supra*); *Hood v. Hartford Life and Acc. Ins. Co.*, 567 F.Supp.2d 1221, 1225-26 (E.D. Cal. 2008) (diligence factor satisfied where basis for additional damages recovery did not become known until after deadline to amend pleadings and, once the basis for additional damages became apparent, "plaintiff promptly requested defendant stipulate to adding the additional claim for damages" and when defendants refused "plaintiff quickly filed the present motion for leave to amend").

The Court also notes Defendants will suffer no unfair prejudice from the amendment as the discovery cutoff is July 10, 2023, and trial is nearly nine months away.

B.   <u>Good Cause to Permit the Amendment Under Rule 15(a)</u>

Once the Court determines Docklight has satisfied Rule 16's good cause requirement, it then must determine whether the proposed amendment is proper under Rule 15(a). *Amazon.com Inc. v. Wong*, 2023 WL 2811613, at *2 (W.D. Wash. April 6, 2023). Under that rule, "courts

should "freely give leave" to amend a pleading "when justice so requires." *Id*. (quoting Fed. R. Civ. P. 15(a)(2)). The policy favoring amendment is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Five factors are used to assess the propriety of a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) prior amendments, and (5) futility of amendment. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). Under Rule 15(d) (Docklight's proposed amendment arises after the deadline expired), the analysis remains unchanged. *Jeff Tracy, Inc. v. Scottsdale Insurance Company*, 2015 WL 12778349, at *2 (C.D. Cal. Aug. 15, 2015).

  (1) <u>No Bad Faith</u>

Defendants argue Docklight acted in bad faith because, at the time Defendants agreed to the Stipulation and prior amendment, "Docklight concealed its failure to make full payments under the Marley License." Dkt. 155 at 12. Defendants also argue Docklight filed its Second Amended Complaint "to avoid" responding to discovery ordered by this Court on October 7, 2022. Dkt. 155 at 5.

As previously noted, Docklight complied with this Court's Order and produced documents responsive to RFP 3 on October 25, 2022. Those documents reflected Docklight's quarterly underpayments to the Marley Estate for the first, second, and third quarters of 2022. Dkt. 153, Brown Reply Decl., Exs. B & C. Thus, the Court finds no evidence of bad faith and this factor favors the proposed amendment.

  2. <u>Undue Delay</u>

On April 11, 2023, Docklight informed Defendants that its rights under the Marley License were being terminated, and Docklight intended to seek damages arising from that termination. Dkt. 153, Brown Decl., ¶ 8. Docklight explained its new damages include revenues

- 8

Docklight will lose by being forced to terminate sublicenses it had with other third parties for the sale of Marley-branded products in Canada, the U.S., and overseas, and revenues it expected to earn from its own sale of Marley-branded products. *Id*. Defendants stated their disagreement to the proposed amendment on April 24, 2023. Dkt. 153, Brown Decl., Ex. G. Docklight filed this motion one week later. There was no undue delay, and this factor favors the amendment.

        3.        <u>Prejudice to Opposing Party</u>

Defendants argue they will suffer undue prejudice by virtue of this amendment because: (1) in reasonable reliance on Docklight's December amendment, they treated discovery into Docklight's relationship with the Marley Estate as moot; and (2) the parties are "close to completing their document productions and preparing to take depositions" and as such there is insufficient time remaining to take more discovery.

When Defendants entered the Stipulation, they included an express provision stating they were not treating Docklight's amendment as having "any impact on the proper scope of discovery." Dkt. 109 at 1. Also, Defendants argue in their brief that they changed their discovery strategy because of the December amendment but offer no evidence in support of this assertion. *See* LCR 7(b)(2) (oppositions to motions must be accompanied by evidence if they rely on facts not contained in the record); *Comstock v. Humphries*, 786 F.3d 701, 709 (9th Cir. 2015) ("arguments in briefs are not evidence").

Also of note, is that Defendants' position changed regarding Docklight's proposed amendment. When Defendants' counsel was originally advised Docklight intended to seek these damages, counsel did not argue Docklight had waived its right to do so. Dkt. 153 at 2 ¶ 10. Instead, they proposed Docklight add this claim simply by updating its discovery responses and initial disclosures. *Id*., ¶ 8.

Defendants also argue they "relied" on Docklight's prior amendment as foreclosing any future claim for these damages. However, Docklight made it clear, in an email immediately preceding Defendants' Stipulation, that it was not relying on the deleted allegations "*as the case now stands*." Dkt. 153 at 27 (emphasis added). Defendants offer no explanation of their understanding of this proviso. Moreover, the Stipulation includes no commitment on Docklight's part with respect to future claims. Conversely, the record reflects the basis for additional damages recovery did not become known to Docklight until after deadline to amend pleadings and, once the basis arose, it acted promptly to include the additional claim for damages.

Defendants also argue there is insufficient time to complete discovery on the proposed additional claim. However, document discovery appears far from complete and to date, no depositions have been scheduled. Dkt. 159, Brown Reply Decl., ¶ 9. According to Docklight, Defendants have produced no documents to date and are still negotiating over ESI search parameters. *Id*. That search will entail review of tens of thousands of additional documents, and Defendants' production will almost certainly not even begin for another month. *Id*. By that time, Docklight will have begun production in response to Defendants' numerous RFPs pertaining to Docklight's new claim (Docklight has already started developing search terms for those responses). *Id*. Further, just eleven days before Docklight sought this amendment, Defendants served Docklight with 28 new RFPs and seven new interrogatories. *Id.*

Thus, it appears discovery Defendants recently served relating to Docklight's new claim can be completed along with remaining outstanding discovery, with no change to the trial date (February 5, 2024). This factor favors the proposed amendment.

4. <u>Prior Amendments</u>

Plaintiff has amended its complaint on three prior occasions. This factor does not favor

the proposed amendment.

5.  Futility of Amendment

Defendants argue Docklight's proposed new claim is futile because: (1) Defendants licensed rights to the Marley brand only with respect to the Canadian market, and as such had no reason to suspect Docklight relied on those payments to pay its obligations to the Marley Estate; (2) Defendants' refusal to pay the GMR to Docklight could not have been a proximate cause of Docklight's loss of the Marley rights; and (3) Docklight could not have renewed its rights under the Marley License beyond 2024 without Defendants' consent.

An amendment is "futile" for purposes of Rule 15 only "if it would be immediately subject to dismissal" under the liberal pleading standards applied to motions to dismiss under Rule 12(b)(6). *Gray v. Amazon.com, Inc.*, 2023 WL 3204074, at *2 (W.D. Wash. May 2, 2023) (quotations omitted). For purposes of this motion, Docklight's well-pleaded allegations are accepted as true.

Defendants did, in fact, have "reason to suspect" Docklight relied on Defendants' GMR to make its own GMR payments to the Marley Estate. Defendants knew, at least by August 10, 2020, that Docklight depended on receiving Defendants' GMR payments to make its own payments to the Marley Estate. See Dkt. 159, Brown Reply Decl., Ex. A ("As you know, the near constant High Park royalty late payments puts significant financial strain on Docklight - we must pay the Marley family on time at the end of every quarter.") Defendants were also aware that Canada was not just "one of many" markets for recreational cannabis but was by far, the most important national market. Dkt. 158, Marano Reply Decl., ¶ 3.

Defendants argue their refusal to pay the $2 million GMR to Docklight did not cause Docklight to lose rights to the Marley Brand. Defendants speculate Docklight failed in its

- 11

financial management, should have set aside funds invested by TPB in May 2021 to make up for the revenue it would lose when Defendants stopped paying their GMR, or should have immediately found some other way to make up for the sudden loss of more than 50% of its revenue. However, none of these arguments is supported by evidence or demonstrate futility of Docklight's proposed new claim that Defendants' failure to pay their GMR resulted in Docklight's inability to pay its contractual GMR to the Marley Estate, thereby causing Docklight to lose rights to the Marley Brand.

Finally, Defendants argue Docklight's request for damages twenty years beyond the 2024 term of the Marley License are futile because Docklight agreed it would not renew the Marley License "without the prior written consent of Tilray, which consent may be granted, withheld, conditioned or delayed by Tilray in its sole discretion for any reason or no reason." Dkt. 156, Declaration of Rondi Greer, Ex. D at 2. However, this contention challenges only a portion of Docklight's new damages claim, which began to accrue in April 2023 when the Marley License was terminated.

The Court finds the proposed amendment is not futile.

Based on the foregoing, the Court **GRANTS** Docklight's Motion to Amend the Case Schedule and Complaint (Dkt. 152) to allow the filing of its Third Amended Complaint after the amended pleading deadline of March 23, 2023. Docklight shall file a non-redlined version of its Third Amended Complaint (*see* Dkt. 152, Appendix A) by **June 2, 2023**.

DATED this 26th day of May, 2023.

BRIAN A. TSUCHIDA
United States Magistrate Judge