UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DOCKLIGHT BRANDS INC,

    Plaintiff-Counterclaim Defendant,

v.

TILRAY INC. and HIGH PARK HOLDINGS LTD,

    Defendants-Counterclaimants.

CASE NO. 2:21-cv-01692-TL

**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL (DKT. 210/212)**

On July 31, 2023, the parties filed a joint LCR 37 Submission Regarding Plaintiff's Responses to Defendants' Discovery Requests. Dkts. 210 and 213 (sealed at Dkts. 212 and 214). Defendants' motion to compel is granted.

## BACKGROUND

Docklight's Third Amended Complaint alleges Defendants' failure to exercise commercially reasonable efforts and nonpayment under its sublicense (the "High Park License") caused the Marley Estate to terminate Docklight's worldwide license to develop and sell Marley-branded products (the "Marley License"). Dkt. 163 ¶ 4.23. In addition to the $13.7 million Docklight seeks for Defendants' alleged breaches of the High Park License, Docklight asserts $125 million for loss of the Marley License worldwide, due to purported lost profits through 2044. *Id.*, Ex. C at 3.

Defendants seek two categories of documents: (1) documents reflecting Docklight's other sublicensees' efforts and success in commercializing the brands (which include sales outside of

ORDER GRANTING DEFENDANTS'
MOTION TO COMPEL (DKT. 210/212) - 1

1  Canada); and (2) documents regarding Docklight and Marley's compliance with the Marley
2  License's commercialization provisions. For the first category of documents, Defendants'
3  requests are limited to the same categories of documents Docklight asked them to produce
4  regarding their commercialization efforts under the High Park License. For both categories,
5  Defendants contend their requests are rooted in already-produced discovery suggesting more
6  documents exist to support Defendants' defenses against Docklight's $125 million claimed
7  damages. According to Defendants, documents produced to date indicate Docklight breached
8  multiple provisions of the Marley License and that Docklight, Marley, and Docklight's other
9  eight sublicensees failed to commercialize the brands.

10  Docklight objects to producing "a slew" of documents pertaining to details of the
11 performance of licenses with other parties under which Docklight earned revenues from the
12 Marley brand outside Canada because "this Court has previously recognized that the
13 performance of contracts other than the one at issue in this case is generally "irrelevant" and non-
14 discoverable." Dkt. 210 at 5-6. Docklight argues the sales information sought by Defendants is
15 not relevant to: (1) "benchmarking" Defendants' performance (or excusing their non-
16 performance) in manufacturing, marketing, and selling inhalable THC products in Canada; (2) an
17 analysis of the revenues Docklight would have earned had it not lost the Marley rights; (3)
18 whether Defendants' decision to cut off 60% of Docklight's revenues in October 2021 caused
19 Docklight to lose the Marley rights; and (4) whether Docklight adequately attempted to mitigate
20 damages for its loss of a licensee in Canada. Docklight contends the only information needed to
21 evaluate its claim for loss of revenues are "documents reflecting historical sales, forecasts, plans,
22 and projections in every market in which Docklight earned revenues from the Marley brand."
23 Dkt. 210 at 5.

ORDER GRANTING DEFENDANTS'
MOTION TO COMPEL (DKT. 210/212) - 2

Docklight also objects to producing documents pertaining to its performance under the Marley License, other than its obligation to pay a guaranteed minimum royalty ("GMR"). Docklight argues these requests are based on mere speculation that Docklight *may* have breached other obligations under the Marley License. Dkt. 210 at 6-7.

**DISCUSSION**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Under Rule 26, the concept of relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). When determining whether evidence is discoverable, the Court must also consider "whether the burden or expense of the proposed discovery outweighs its likely benefits." Fed. R. Civ. P. 26(b)(1). Once the party seeking discovery has established the request meets this relevancy requirement, "the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." *Bryant v. Ochoa*, 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009).

A.  Documents Regarding Non-Canada Sublicensees

Defendants' RFPs 58-63, 76-77, 84, 106, 107, and 152 seek information regarding the efforts Docklight and its sublicensees made to maximize sales. Dkt. 213, Exs. A, B, H. Docklight objects that Defendants' demand is not relevant as to non-competing products (all licensed products sold in Canada were inhalable THC-dominant products while a majority of licensed products sold outside Canada were from cannabis accessories containing no THC and CBD products with almost no THC).

As the Court previously recognized, "Docklight's [Third Amended Complaint] expands the scope of relevant discovery … to worldwide," and "make[s] the performance of Docklight's international sublicensees relevant." Dkt. 201 at 4. The Court extended the trial date and pretrial deadlines to allow Defendants to complete discovery into the "sales, marketing, expenses, and financials" of Docklight and its third-party sublicensees world-wide…. *Id.* In addition, the Court agrees the documents are relevant as a baseline for commercial reasonableness, future lost income, causation, and mitigation.

1. <u>Baseline for Commercial Reasonableness</u>

Docklight disagrees documents relating to the commercial efforts of its sublicensees are relevant to whether Defendants acted in a commercially reasonable manner because Docklight's other licenses covered different markets (outside of Canada) and different sales (non-inhalable THC products). Docklight first raised the issue of Defendants' lack of commercially reasonable efforts in its termination notice. Dkt. 213, Ex. F. In response, Defendants point to their sales, which exceeded all eight of Docklight's other sublicensees combined (Dkt. 183 ¶ 2 (Defendants' sales over 60% of Docklight revenue)) and a March 2020 valuation (issued before Defendants' breaches), in which Docklight projected it would lose $35 million between 2020 and 2025, becoming profitable only in 2026. *Id*., Ex. L at DOCK051182 (line 6: Net income/loss).

While the licensees were operating in different markets and Defendants were operating in Canada, where recreational cannabis is legalized nationwide, the Court agrees the information sought is broadly relevant to establishing a baseline – or at least a basis for deriving a baseline measurement to which Defendants' results might be compared. *See, e.g.*, *Plexicoat America LLC v. PPG Architectural Finishes, Inc*, 2015 WL 171831, at *3, n.6. Information about Docklight's other sublicensees' efforts may also be relevant to Docklight's expectations about what

constitutes commercially reasonable efforts. *See Warner Bros. Int'l Television Dist. v. Golden Channels & Co.*, 2003 WL 27384420, at *5 (C.D. Cal. Sept. 26, 2003) (granting motion to compel where information could demonstrate licensor's expectations about licensee's performance). Defendants' requests are also proportional as they mirror the documents Docklight requested of them relating to their commercialization efforts under the High Park License.

    2.    <u>Future Lost Income</u>

Docklight has agreed to produce documents reflecting historical sales, forecasts, and projections in the other markets. Dkt. 210 at 16. Docklight objects to producing documents relating to its "evaluation" of the performance of the other sublicensees due to the drastically dissimilar territories.

Defendants' requests (RFP 58 (volume of vape sales); RFP 62 (pricing of products); RFP 84 (sales projections); and RFP 106-107 (production, growth, and manufacturing costs) are relevant to establish revenues, sales, costs, and expenses of the third-party sublicensees for which Docklight seeks future lost profits. Documents relating to Docklight's "evaluation" of its sublicensees performance is also relevant to Docklight's expectations of what constitutes commercially reasonable efforts.

    3.    <u>Causation</u>

Docklight alleges Defendants' failure to exercise commercially reasonable efforts led to Defendants' default on their GMR payments to Docklight, which then led to Docklight's default on its GMR payments to the Marley Estate and ultimately, to the loss of $125 million in future income from the Marley License. Defendants' requests (*i.e.*, 58, 62, 84, 106-107, and 152) seek information that is relevant to Defendants' claim that the cause of Docklight's inability to pay is that the combined revenues and efforts of the other eight sublicensees was less than that of the

1   High Park License (Dkt. 183 ¶ 2 – other sublicenses represented only 10% of Docklight's
2   revenue) and Docklight failed to improve alternate sources of revenue.

3       4.    <u>Mitigation</u>

4   Defendants first stopped paying Docklight in October 2021. The Marley Estate
5   terminated the Marley License on April 18, 2023. Defendants' requests seek information to show
6   that in the intervening eighteen months, Docklight failed to mitigate damages, such as by
7   improving marketing in other markets (RFP 76) or developing new flavors (RFP 59),
8   formulations (RFP 60), or strains (RFP 62) of existing products, or developing new products
9   entirely (RFP 77). Docklight accuses Defendants of failing to exercise commercially reasonable
10  efforts for each of the above issues. In support of their claim that Docklight failed to mitigate its
11  damages, Defendants seek information relating to whether Docklight exercised commercial
12  reasonableness to improve sales worldwide. The requests are relevant.

13  B.    <u>Documents Relating to Docklight's Performance Under the Marley License</u>

14  Defendants' RFP Nos. 112-14, 117, 119, 122, 125-126, 130-31, and 133 request
15  materials relating to Docklight's compliance with the Marley License. Ex. B at 15-26.[1]

16  Docklight requests over $125 million of consequential damages for loss of the Marley
17  License. Dkt. 163 ¶ 4.23. Defendants' requests target Docklight's compliance with other terms of
18  the Marley License to show intervening causes of either Docklight's inability to pay or the
19  Marley Estate's termination of the license, or both. Defendants contend that, despite their efforts

---

[1] Docklight objects that Defendants combined eleven RFPs by setting forth just one and characterizing the remainder in contravention of LCR 37(a)(2)(B). Although Docklight is technically correct, Defendants followed the same format in setting out Defendants RFPs 58-63, 76-77, 84, 106, 107, and 152 without objection. In addition, the requests and objections are attached as exhibits and the parties jointly submitted this LCR 37 Submission for the Court's consideration. The Court reviews the Submission on the merits.

ORDER GRANTING DEFENDANTS'
MOTION TO COMPEL (DKT. 210/212) - 6

1   in Canada, the Marley products failed worldwide.

2   Docklight argues this discovery is improperly based on mere speculation it *may* have
3   violated other provisions of the Marley License and the requests are therefore not relevant.
4   According to Defendants, discovery documents to date indicate Docklight may have violated
5   other provisions, *i.e.*, Docklight admitted it never manufactured any Marley products despite a
6   license provision that it remain the primary manufacturer of Marley-branded products, and
7   documents suggesting Marley and Docklight failed to manufacture and/or promote the Marley
8   brand worldwide. *See* Dkt. 210, pp. 19-20 (and License sections cited therein). Whether
9   Docklight and Marley failed to promote the products is relevant to Docklight's allegation that
10  poor sales were caused by Defendants' failure to commercialize. Additionally, Docklight claims
11  it could have renewed the Marley License for four separate five-year terms through 2044.
12  However, the Marley License required Docklight to furnish quarterly sales reports and achieve a
13  certain minimum of net sales in the initial term through 2024 to renew. Whether Docklight could
14  have qualified for renewal is relevant to its claim of future damages.

15  C.   Burden of Production

16  Proportionality of discovery depends on "whether the burden or expense of the proposed
17  discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). A party seeking to avoid
18  discovery may establish undue burden by providing specific facts that show the nature and extent
19  of the burden. *See In re Application of Savan Magic Ltd.*, No. 217CV01689JCMNJK, 2017 WL
20  6454240, at *4 (D. Nev. Dec. 18, 2017).

21  As to the first category of documents, Docklight already agreed to review and produce
22  about 14,000 documents and with these requests, argues it will be required to review "roughly
23  double" that number. However, Defendants agreed to produce the same categories of documents

relating to the High Park License, the same custodians involved in that production manage Docklight's other sublicensees, and the same terms will be applied. Additionally, Defendants reviewed 63,308 documents in 2022 and agreed to review an additional 26,205 new documents in 2023. Dkt. 213, Gazzola Decl. at ¶ 5. Thus, the amount Docklight is being asked to review is a proportional volume of new documents.

As to the second category of documents requested, Docklight's objection on burden can be addressed through the negotiation of reasonable search terms. Defendants' latest term proposal for the RFPs in Section B.1 resulted in just 10,432 hits prior to deduplication. Dkt. 213; Gazzola Decl. ¶ 3, Ex. K. The Court agrees this figure is reasonable and proportional considering Docklight's $125 million damages request.

In conclusion, the Court finds Defendants' requests are relevant to the parties' claims or defenses and are proportional to the needs of the case. Accordingly, it is **ORDERED** that Defendants' motion to compel RFP Nos. 58-63; 76-77; 84; 106-107; 152; 112-114; 117; 119; 122; 125-126; 130-131; and 133 are **GRANTED**. The parties shall agree on reasonable search terms and Docklight shall produce the discovery by **September 14, 2023**.

DATED this 14th day of August, 2023.

BRIAN A. TSUCHIDA
United States Magistrate Judge