UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DOCKLIGHT BRANDS INC, <br><br> Plaintiff-Counterclaim Defendant, <br><br> v. <br><br> TILRAY INC. and HIGH PARK HOLDINGS LTD, <br><br> Defendants-Counterclaimants. | CASE NO. 2:21-cv-01692-TL <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISQUALIFY AND MODIFY PROTECTIVE ORDER** |

Defendants Tilray Inc. ("Tilray") and High Park Holdings Ltd. ("High Park") move to disqualify Attorney Patrick Moen, Senior Vice President for Corporate Development and Legal Affairs for Plaintiff Docklight Brands Inc. ("Docklight"), and to modify the protective order to preclude Patrick Moen from reviewing discovery in this litigation. Dkt. 174. Mr. Moen is one of two Docklight internal executives assisting Docklight's outside counsel in the management of this case. Dkt. 187 at 1. Docklight opposes the motion. Dkts. 187, 188, 189. Defendants filed a reply, declarations, and additional exhibits. Dkts. 190, 191, 192.[1] Docklight filed a surreply and additional declaration (Dkts. 202, 203) with a motion to strike. Defendants sought leave to file a sur-surreply (Dkt. 206), which the Court denied. Dkt. 220.

The Court denies the motion to strike and grants the motion to disqualify and to modify the protective order.

---

[1] Defendants submitted unredacted versions of all exhibits for an *in camera* review.

ORDER GRANTING DEFENDANTS'
MOTION TO DISQUALIFY AND MODIFY
PROTECTIVE ORDER - 1

| | |
|---|---|
| 1 | MOTION TO STRIKE |

<u>MOTION TO STRIKE</u>

Docklight asks the Court to strike evidence and arguments raised in Defendants' Reply and to strike as hearsay, statements by counsel regarding certain telephone calls with Docklight's counsel. *See* Dkt. 192 ¶ 1; Dkt. 202 pp. 3-4. The Court **DENIES** the motion.

First, the Court denies the motion to strike evidence as it would reach the same outcome without the material to which Docklight objects. The evidence is not "new" to Docklight as it consists of emails to which Mr. Moen was a party, legal services agreements prepared by Mr. Moen, and interrogatory responses. Considering the evidence is also appropriate in this circumstance because Defendants raise it in direct response to issues raised in Docklight's opposition brief as to unreasonable delay and joint representation. *See* Dkt 187 at 5-6. *See*, *Defs. of Wildlife v. U.S. Fish*, 2016 WL 4382604, at *10 (N.D. Cal. Aug. 17, 2016) (the court may consider reply evidence if it is "offered in direct response" to issues raised in opposition).

Second, the Court denies the motion on hearsay grounds as the declaration of counsel is "based upon [his] involvement in this case and a review of the file," Dkt. 192 ¶ 1, not on being party to the specific conversations, *id.* ¶ 12. Counsel's statement "in all prior communications … Docklight has denied that Mr. Moen provided legal advice to Defendants on the topics relevant to this litigation" mirrors Docklight's contention it has consistently denied Mr. Moen provided legal advice to Defendants, *see*, *e.g.*, Dkt. 187 at 7-8 ("Docklight's counsel rejected that proposition"); Dkt. 175, Ex. N ("Mr. Moen was not acting as [Defendants'] attorney").

<u>FACTUAL BACKGROUND</u>

This case involves the December 17, 2018 License Agreement between Docklight and High Park, as amended (the "December 2018 License Agreement"). When the December 2018 License Agreement was drafted and executed, the parties were still related. Docklight and Tilray

ORDER GRANTING DEFENDANTS'
MOTION TO DISQUALIFY AND MODIFY
PROTECTIVE ORDER - 2

1   were subsidiaries of Privateer, and High Park was (and is) a subsidiary of Tilray. Dkt. 174 at 5.

2   A.      Patrick Moen's Involvement in Structuring Parties

3           Privateer was formed in 2010 by Brendan Kennedy, Michael Blue, and Christian Groh.

4   Dkt. 164 at ¶ 6. In November 2013, Privateer hired Mr. Moen as its general counsel, who was

5   "[r]esponsible for all legal and compliance affairs for the firm and *all portfolio companies*." Dkt.

6   175, Gazzola Decl., Ex. A (Patrick Moen LinkedIn) (emphasis added). In April 2021, Mr. Moen

7   became Senior Vice President for Corporate Development and Legal Affairs for Docklight. *Id*.

8           All parties to this litigation were Privateer portfolio companies. Privateer formed

9   Docklight (then known as Privateer Brands LLC) as a wholly owned subsidiary in 2015. Dkt.

10  164 at ¶ 9. Privateer formed Defendant Tilray as a wholly owned subsidiary in 2013, *id*. at ¶ 8,

11  and Defendant High Park was formed as a wholly owned subsidiary of Tilray in February 2018.

12  Throughout these structuring transactions, Mr. Moen was personally involved with forming High

13  Park as a subsidiary to Tilray, together with outside counsel. *Id.*, Ex. D (Feb. 6, 2018 request

14  from Mr. Moen to outside counsel to assist with forming High Park); Ex. P (Feb. 8, 2018

15  direction from Mr. Moen regarding structuring of High Park shares); Ex. Q (Feb. 9, 2018 email

16  from Mr. Moen announcing Tilray corporate structure following changes).

17  B.      Mr. Moen's Involvement in SEC Filings and Advice to Tilray

18          On July 19, 2018, Tilray went public on NASDAQ, although Privateer continued as

19  majority owner of the voting power of all outstanding shares of Tilray's capital stock. Dkt. 164 at

20  ¶ 14. In his role as general counsel of Privateer, Mr. Moen led the IPO. Dkt. 175, Gazzola Decl.,

21  Ex. A (Patrick Moen LinkedIn); *id.*, Ex. C at 3 (IPO contact sheet listing Mr. Moen as a Tilray

22  contact under the title "Managing Director & General Counsel"). As the lead on Tilray's IPO,

23  Mr. Moen served as notice person for several of Tilray's SEC filings, including Tilray's June 20,

ORDER GRANTING DEFENDANTS'
MOTION TO DISQUALIFY AND MODIFY
PROTECTIVE ORDER - 3

2018 Form S-1, which attached the 2018 February License. *Compare* Dkt. 163 (Third Amended Complaint) at ¶ 4.21 ("[B]eginning in June 2018, Tilray described the terms and appended unredacted copies of the License …") with Dkt. 175, Ex. K (May 30, 2018 email from Mr. Moen discussing Tilray's confidential draft S-1 and upcoming public filing of same); *id.*, Ex. L (July 2018 email from Mr. Moen providing sign-off on Canadian S-1 filing to Tilray and Privateer's outside counsel on behalf of Tilray).

Mr. Moen held a Tilray email account from at least March 2018 to November 2019 and provided legal advice to Tilray during board meetings. *See*, *e.g.* Dkt. 175, Gazzola Decl., Ex. B (June 2018 email from patrick.moen@tilray.com to Tilray board attaching privileged materials). In 2018 and 2019, Mr. Moen prepared two Joint Services Agreements between Privateer and High Park allowing him to provide privileged legal advice to Tilray without "jeopardizing his license or the company's privilege." Dkt. 192, Gazzola Decl., Ex. EE at 10; Ex. Z at 3-4; Ex. FF ¶ 1.2. Mr. Moen was also covered on Tilray's legal malpractice insurance. Dkt. 191, Gendel Decl. at ¶ 5.f.

Mr. Moen continued to advise Tilray on legal issues, Dkt. 192, Gazzola Decl., Ex. DD, and worked with Dara Redler to transition her into her role [as Tilray's general counsel], *id.*, Ex. AA. From February 2018 to March 2021, Mr. Moen participated in over 2,200 email chains with Tilray's other internal lawyers. *Id.* at ¶¶ 15-16; *see also id.*, Ex. S and Ex. T (November 2018 emails from Tilray board members to Mr. Moen and others re: Tilray's negotiation of a joint venture with a beverage partner for cannabis-infused products in late 2018, which would implicate license between Docklight and High Park). Mr. Moen does not recall responding to Exhibit S. However, during November 2018, Mr. Moen, Colin Brown (Tilray attorney), Barry Brooks (Tilray's outside counsel), and Michael Auerbach (Tilray board member) were on 232

communications together regarding the transaction. Dkt. 192, ¶ 14.

C.     February 2018 and December 2018 License Agreements

In February 2018, Docklight and High Park entered into the February 2018 License Agreement. Dkt. 175, Gazzola Decl., Ex. E. The February 2018 License Agreement was prepared by Mr. Moen and his legal staff at Privateer mere days after High Park's formation. *Id.*, Ex. R (Feb. 13, 2018 exchange including Mr. Moen regarding drafting and execution).

Mr. Moen maintains that while he was responsible ensuring the Privateer portfolio was properly managed, Docklight and Tilray/High Park were represented by their own general counsel. Dkt. 189, Moen Decl. at 2-3 ("Christy Zhou served as Tilray's General Counsel (Canada) from June 2015 until January 2019; Dara Redler served as Tilray's General Counsel from January 2019 through May 2021, and Christopher Moore served as Docklight's General Counsel from November 2016 until March 2022."). However, as previously noted, on February 5, 2018, the day before Mr. Moen initiated the process to form High Park (Dkt. 175, Ex. D) and a week before Mr. Moen prepared the February 2018 License on behalf of both parties (Dkt. 175, Ex. R), Tilray and Privateer entered into the Joint Services Agreements prepared by Mr. Moen to allow Mr. Moen to provide privileged legal advice to Tilray. Dkt. 192, Ex. EE at 10; Dkt. 192, Ex. Z at 3-4; Ex. FF ¶ 1.2.

In December 2018, Docklight and High Park entered into the December 2018 License Agreement. *Id.*, Ex. F. Mr. Moen was involved in negotiating and drafting the License Agreement on behalf of both parties. *Id.*, Ex. G (Dec. 6, 2018 email from Moen seeking Tilray's approval for edits); *id.*, Ex. H (Dec. 6, 2018 email from Moen seeking Docklight's approval for edits); *id.*, Ex. I (Dec. 5, 2018 email from Moen confirming he conferred with Tilray's then-CEO, Brendan Kennedy, before making edits); *id.*, Ex. J (Dec. 12, 2018 exchange between Mr.

Moen and High Park and Tilray employees only); *id.*, Ex. U (Dec. 5, 2018 exchange between Mr. Moen and Tilray employees only); *id.*, Ex. V (Dec. 6, 2018 email from Tilray employee to Mr. Moen seeking advice regarding draft). The parties freely shared communication as to the 2018 February and December Licenses. Dkt. 189, Moen Decl., ¶ 10.

DISCUSSION

"Washington courts are reluctant to disqualify an attorney absent compelling circumstances." *Aecon Bldgs., Inc. v. Zurich N. Am.*, No. C07-0832MJP, 2008 WL 2940599, at *2 (W.D. Wash. July 24, 2008) (citing *Pub. Util. Dist. No. 1 of Klickitat Co. v. Int'l Ins. Co.*, 881 P.2d 1020 (Wash. 1994))). "In determining whether an attorney's representation of a particular client violates the attorney's ethical responsibilities, the [c]ourt first refers to the local rules regulating the conduct of members of its bar." *United States ex rel. Lord Elec. Co., Inc. v. Titan Pac. Constr. Corp.*, 637 F. Supp. 1556, 1560 (W.D. Wash. 1986); *In re Cnty. of L.A.*, 223 F.3d 990, 995 (9th Cir. 2000). Attorneys practicing in the Western District of Washington must abide by the "Washington Rules of Professional Conduct ["RPC"]. Local Rules W.D. Wash. LCR 83.3(a). Applicable here is RPC 1.9(a):

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

A.   <u>The Matters Are Substantially Related</u>

Matters are "substantially related" if "they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." RPC 1.9(a), Comments 2, 3; *See Plein v. USAA Cas. Ins. Co.*, 195 Wn.2d 677, 690 (2020); *FMC Techs., Inc. v. Edwards*, 420 F. Supp. 2d 1153, 1159 (W.D. Wash.

ORDER GRANTING DEFENDANTS'
MOTION TO DISQUALIFY AND MODIFY
PROTECTIVE ORDER - 6

2006); *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980) ("Substantial relation is presumed where there is a reasonable probability that confidences were disclosed which could be used against the client in later representation.") "The test does not require the former client to show that actual confidences would be disclosed," as "[t]hat inquiry would be improper as requiring the very disclosure the rule is intended to protect." *Id*. at 999.

Defendants contend the current matter is substantially related to Mr. Moen's prior representation of Defendants because Mr. Moen: (1) drafted the December 2018 License Agreement; (2) was personally responsible for alleged breaches of confidentiality while he represented Defendants; and (3) was responsible for structuring Defendants, which implicates Docklight's alter ego claims. Dkt. 174 at 11. Docklight contends Mr. Moen represented Defendants and Docklight jointly as to the License Agreements; there is no evidence to support any inference Mr. Moen obtained confidential information in connection with the IPO, and there is nothing confidential or relevant about the 2018 "structuring" of the Privateer companies to Docklight's claim arising from events three years later. Dkt. 187 at 13.

The current lawsuit is substantially related to Mr. Moen's work preparing the December 2018 License Agreement on behalf of both parties. In addition to breach of payment, Docklight alleges High Park and Tilray breached other provisions of the December 2018 License Agreement, *i.e.*, Sections 1.3 (Duty to Exploit), 8.6 (Inspection of Books and Records), 15 (Confidentiality). Dkt. 163 at ¶¶ 4.10- 4.21. In their counterclaims, Defendants allege Docklight breached several provisions, *i.e.*, Sections 1.6 (Right of First Offer), 8.8 (Periodic Adjustment), 10.2 (Termination for Cause), 10.3 (Other Termination Rights), 15 (Confidentiality), and 16.11 (Dispute Resolution). Dkt. 164 at ¶¶ 63-70. While the December 2018 License Agreement has been amended several times since Mr. Moen prepared it on behalf of both parties, many of the

ORDER GRANTING DEFENDANTS'
MOTION TO DISQUALIFY AND MODIFY
PROTECTIVE ORDER - 7

1   terms relevant to this litigation are identical or substantially identical to those prepared by Mr.

2   Moen in 2018. *See*, *e.g.*, Sections 1.3 (Duty to Exploit), 1.4 (Covenants), 8.6 (Inspection of

3   Books and Records), 8.8 (Periodic Adjustment), 10.2 (Termination for Cause), 10.3 (Other

4   Termination Rights), 15 (Confidentiality), and 16.11 (Dispute Resolution). Several other

5   provisions are relevantly interconnected with provisions that Mr. Moen helped negotiate and

6   draft in the December 2018 License Agreement. For example, the License Schedule, despite

7   being amended, still involves two of the same brands, the same territory, and the same royalty

8   rate for certain products, among other provisions. Similarly, the Second Amendment's Section

9   1.6 (Right of First Offer), despite being amended, is still relevantly interconnected with the

10  original Right of First Offer provision in the December 2018 License Agreement.

11         Docklight also accused Defendants of breaching confidentiality provisions of the

12  December 2018 License Agreement by publishing unredacted copies of the License in Tilray's

13  SEC filings "beginning in June 2018." *See*, *e.g.*, Dkt. 163 at ¶¶ 4.21. Documents reflect Mr.

14  Moen approved the filings as lead internal attorney in the IPO. Dkt. 175, Ex. A (Moen

15  LinkedIn); Ex. C at 3 (IPO contact sheet listing Mr. Moen as a Tilray contact under the title

16  "Managing Director & General Counsel"); Ex. L (July 2018 email from Mr. Moen providing

17  sign-off on Canadian S-1 filing to Tilray and Privateer's outside counsel on behalf of Tilray).

18  Mr. Moen also served as a notice person for at least one filing that attached an earlier version of

19  the License Agreement. *Id.*, Ex. O (Tilray June 20, 2018 Form S-1 Excerpt).[2]

20         Docklight also seeks to hold Tilray liable for High Park's alleged breach on the theory

21  that Tilray served as High Park's alter ego and has made allegations relating to Tilray's corporate

---

[2] Docklight has since dismissed its claim for breach of the License's confidentiality clause. Dkt. 200.

ORDER GRANTING DEFENDANTS'
MOTION TO DISQUALIFY AND MODIFY
PROTECTIVE ORDER - 8

structure. Dkt. 163 at ¶ 4.25. Defendants maintain these allegations are substantially related to Mr. Moen's prior work with leading the structuring of High Park and Tilray. *See*, *e.g.*, Dkt. 175, Ex. P (Feb. 8, 2018 direction from Mr. Moen regarding how to structure High Park's shares); Ex. Q (Feb. 9, 2018 email from Mr. Moen announcing Tilray corporate structure following changes). Docklight argues Defendants failed to specifically show how Mr. Moen's corporate structuring of Defendants three years ago could possibly relate to the claims in this lawsuit. However, it is unreasonable to argue that during Mr. Moen's joint representation of both parties and years of providing legal advice to Tilray, he would not have received Defendants' confidential information regarding issues relevant to this litigation. *See also*, *Trone*, 621 F.2d at 999 (the test of substantial relation does not require the former client to show that actual confidences would be disclosed).

B.  <u>An Attorney-Client Relationship Existed</u>

The "essence of the attorney-client relationship is whether the attorney's assistance or advice is sought and received on legal matters." *In re Disciplinary Proceeding Against Egger*, 152 Wash. 2d 393, 410-11 (2004). The record reflects Defendants sought and received advice regarding the December 2018 License Agreement from Mr. Moen (Dkt. 175. Exs. G, H, I, J, R, S, T, U, V); Mr. Moen formed High Park and structured the corporate relationships between Defendants (*id*. Exs. D, P, Q); Mr. Moen directed and approved the IPO filings (*id*. Exs. K, L); Mr. Moen prepared agreements to provide legal advice to Tilray (Dkt. 192, Ex. EE at 10; (Ex. Z at 3-4; Ex. FF ¶ 1.2); Mr. Moen continued to advise Tilray on legal issues (Ex. DD), worked closely with Dara Redler to transition her into her role (Ex. AA); was included in Tilray's malpractice insurance as he and Dara were coordinating shared services (Ex. CC); and participated in over 2,200 email chains with Tilray internal lawyers between February 2018 and

March 2021. Dkt. 192, Gazzola Decl. ¶¶ 15-16. Mr. Moen also provided legal advice to Tilray and its board regarding a joint venture with a third party. *Id.*, ¶ 14.

Mr. Moen admits he was involved in structuring Defendants, Dkt. 189 ¶¶ 11-12, and describes a joint representation between Docklight, Defendants, and Privateer as to the February and December License Agreements, which he prepared. *Id.* ¶ 10. According to Mr. Moen, the parties and Privateer "freely shared communications among themselves with respect to the License." Dkt. 187 at 12; Dkt. 189, Moen Decl., ¶ 10. Docklight argues that, at best then, Defendants and Docklight were joint clients, and therefore, cannot assert the attorney-client privilege against the other. However, if a joint representation existed between Docklight and Defendants as to the 2018 Licenses, Mr. Moen is still prohibited from using information acquired during the joint representation to the disadvantage of Defendants. *Brennan's, Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 172 (5th Cir. 1979); *see also In re Taylor*, 67 S.W.3d 530, 533 (Tex. Ct. App. 2002) (attorney "disqualified from representing any of the multiple parties to the agreement"). RPC 1.9(b) prohibits the use of "confidences or secrets relating to the representation to the disadvantage of the former client and is not limited to attorney-client privileged information.³

Additionally, attorneys may not attack their own work product, which Mr. Moen does here because he worked on both Licenses and the structuring of the Defendants that forms the basis of Docklight's alter ego claim. *Franklin v. Callum*, 782 A.2d 884, 887 (N.H. 2001)

---

³ "Confidence is defined by the RPCs as "information protected by the attorney-client privilege." The definition of "secret" is broader as it refers to "other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." WASH. RULES OF PROF'L CONDUCT Terminology. *See also*, ABA MODEL RULES OF PROF'L CONDUCT R. 1.6 cmt. 3 (confidentiality applies "not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source.")

(disqualifying former general counsel who drafted disputed agreements); *T1 Payments LLC v. New U Life Corp.*, 2021 WL 139989, at *10 (D. Nev. Jan. 14, 2021) (attorney's representation unethical when attacking own work product); *Exterior Sys. Inc. v. Noble Composites, Inc.*, 175 F. Supp. 2d 1112, 1117 (N.D. Ind. 2001) (disqualifying attorney suing successor to former client on contract created for former client).

In conclusion, Defendants have met their burden to show that an attorney-client relationship with Mr. Moen existed and that his current representation of Docklight is adverse to them. Mr. Moen represented Defendants in the preparation of the License Agreement at issue; provided privileged legal advice to Tilray under two joint services agreement; maintained a Tilray email and was covered under legal malpractice insurance purchased by Tilray. *See Kurbitz v. Kurbitz*, 77 Wash. 2d at 947 (citing *United States v. Trafficante*, 328 F.2d 117 (5th Cir.1964)); *see also*, *RWR Mgmt Inc. v. Citizens Realty Co.*, 133 Wash. App. 265, 280 (2006) (affirming trial court's decision to disqualify attorney who assisted both parties in the drafting and negotiation of an agreement when adverse party disclosed confidences, did not hire independent counsel to represent it in the negotiations, and considered counsel be its attorneys).

C.      <u>No Unreasonable Delay and Failure to Show Extreme Prejudice</u>

Docklight argues Defendants' delay in bringing this motion means they have waived all objections to Mr. Moen's continued participation in this litigation. The "failure to act promptly in filing a motion for disqualification *may* warrant denial of [the] motion." *First Small Bus. Inv. Co. v. Intercapital Corp.*, 108 Wash.2d 324, 337, 738 P.2d 263 (1987) ("This court will not allow a litigant to delay filing a motion to disqualify to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of a case has been completed."); *See also*, *In re Firestorm 1991*, 129 Wn.2d 130, 145 (1996) (nine-month delay was grounds for

denial of a disqualification motion). In *Eubanks v. Klickitat Cnty.*, 181 Wn. App. 615, 620-22 (2014) (eighteen-month delay, eleven months of discovery struggles and depositions, and prejudice to an emotionally fragile plaintiff was grounds for denial of disqualification motion).

Mr. Moen maintains that, as early as the summer of 2020, "Defendants' management – including their General Counsel Dara Redler – was well aware [Mr. Moen] was acting on behalf of Docklight with respect to [a dispute over performance under the December 2018 License], but never raised any concerns about any "purported 'conflict.'" Dkt. 189 at 2. Also, in an October 2021 telephone call, Mr. Moen introduced himself to Defendants' General Counsel Mitch Gendel as Docklight's in-house counsel, explained his former role with respect to the then co-owned companies, Docklight and Tilray, and "specifically discussed his involvement in the Tilray IPO". Dkt. 189, Moen Decl., ¶ 4.

According to Mr. Gendel, Defendants' current management was aware Mr. Moen had worked for Docklight since 2021 but were not aware that as general counsel of Privateer, Mr. Moen provided extensive legal advice to Defendants. Dkt. 191, Gendel Decl. ¶¶ 3, 5.[4] In addition, Mr. Moen never requested a waiver or disclosed the extent of his legal advice to Defendants' current management (*id*., Gendel Decl. ¶ 4, 6; Dkt. 192, Gazzola Decl. ¶¶ 3-7). Mr. Moen did not reveal to Mr. Gendel that he had prepared joint services agreements between Privateer and Tilray in 2018 to provide privileged legal advice to Tilray; had directed outside counsel on the formation of High Park on behalf of Tilray; drafted the February 2018 High Park License on behalf of both entities; advised Tilray's board regarding the impacts on the High Park License from Tilray's negotiations with a third party; drafted the December 2018 High Park

---

[4] Tilray and Aphria merged May 3, 2021 and former-Aphria's management took over Tilray. Mr. Gendel was hired in July 2021, and by the time this dispute began in October 2021, none of Tilray's pre-merger management was still in place. Dkt. 191, Gendel Decl. ¶ 2.

ORDER GRANTING DEFENDANTS'
MOTION TO DISQUALIFY AND MODIFY
PROTECTIVE ORDER - 12

License on behalf of both entities; obtained legal malpractice insurance through Tilray in 2019; provided legal advice to Tilray's board; and personally directed outside legal counsel's strategy in Tilray's IPO and personally approved filings that publicly disclosed earlier versions of the High Park License. *Id.* at ¶ 5.

Docklight also points to Defendants' knowledge of a potential conflict in March 2022 (when High Park identified Mr. Moen in its discovery responses as one of several people involved in the "negotiation, preparation, review, approval, and/or execution" of the December 2018 License). Dkt. 188, Brown Decl., Ex. B. Defendants state they simply identified Mr. Moen's involvement on behalf of Privateer (Dkt. 192, Ex. GG at 3), while Docklight's responses identified Mr. Moen as being involved on behalf of Docklight only. Docklight next argues Defendants knew of the conflict in April 2022, when they raised the issue of shielding Mr. Moen from reviewing discovery due to conflicts arising from public disclosure of the License in an SEC filing associated with the Tilray IPO (*id.*, Ex. C); and in a June 2022 telephone conference, when Defendants' counsel suggested Mr. Moen should not have access to sensitive materials considering his former involvement with Tilray. *Id.* at ¶ 6.

Defendants counter that when they previously raised conflict concerns, Mr. Moen and Docklight's counsel unequivocally denied any wrongdoing. As late as May 9, 2023, Docklight's counsel rejected Defendants' concerns. *See, e.g.*, Dkt. 175, Ex. N ("Tilray was well aware in 2018 that Mr. Moen was not acting as its attorney vis a vis Docklight with respect to the License. Tilray's subsequent conduct underscores that fact. And Tilray's assertion, that it "just learned" about Mr. Moen's prior involvement, is ridiculous.") Until Defendants identified contradictory evidence, they were entitled to rely on Mr. Moen's representations. The ethical rules also placed the burden on Mr. Moen to obtain informed consent to act against Defendants. *In re Marriage of*

*Wixom*, 182 Wash. App. 881, 906 (Wash. Ct. App. 2014). Mr. Moen did not request a waiver or disclose the extent of his legal advice to Defendants' current management. Dkt. 191, Gendel Decl. ¶ 4, 6.

After Docklight refused to shield Mr. Moen from confidential information on May 9, 2023 (Dkt. 175, Ex. N), Defendants learned through further review that Mr. Moen had his own Tilray email account, provided advice and privileged materials to Tilray's board using that email address, provided legal advice to Tilray through legal services agreements, was insured by Tilray, and had significant involvement in Tilray's legal affairs. Defendants contend that following Docklight's renewed denial, it was reasonable for Defendants to investigate Mr. Moen's role prior to moving for disqualification. *See*, *e.g.*, *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 2007 WL 3203056, at *1, 5 (N.D. Cal. Oct. 29, 2007) (two month delay reasonable where party attempted to resolve matter informally and motion not raised "on the eve of trial").

The Court finds no evidence Defendants are using this motion as "tool to deprive [their] opponent of counsel of his choice after substantial preparation of a case has been completed." Mr. Moen is not acting as Docklight's trial counsel of choice, but as one of two internal corporate executives who have been managing this lawsuit. Dkt. 187 at 1. The parties have yet to complete discovery and the Court extended the discovery deadline and trial by six months. Dkt. 201. Docklight maintains Mr. Moen has played a "key role in managing this litigation, including developing strategies, responding to discovery, and helping to prepare filings." Dkt. 187 at 14; Dkt. 189 ¶ 13. Thus, Mr. Moen's key role in developing strategies to deploy against his former client, would cause incredible harm to Defendants. *Mitchell Int'l, Inc. v. Healthlift Pharmacy Servs., LLC*, 2020 WL 10459732, at *7 (D. Utah Oct. 13, 2020) ("[A]ny minimal prejudice

resulting from the disqualification … is far outweighed by the harm to [former client] if [attorney] is permitted to litigate this case against his former client.").

Docklight has failed to show extreme prejudice from the disqualification of Mr. Moen. Although Docklight argues Mr. Moen's disqualification would be "devasting," Mr. Moen is one of two internal executives assisting outside counsel in this litigation. Docklight is not in the position of having to hire new trial counsel as it is and has been presented by three partners of a large outside firm. *See* Dkt. 187 at 1. In addition, the Court recently extended trial and all pretrial deadlines in this matter by six months to allow prosecution of Docklight's new claims. Dkt. 201; *see In re Complex Asbestos Litig.*, 232 Cal. App. 3d 572, 599-600 (Cal. App. 1991) (even delay until eve of trial did not justify denying motion where counsel failed to show "extreme prejudice").

C.  Modification of Protective Order

"A district court has broad discretion in deciding whether to modify protective orders." *Lahrichi v. Lumera Corp.*, 433 F. App'x 519, 521 (9th Cir. 2011) (citing *Empire Blue Cross & Blue Shield v. Janet Greeson's a Place For Us, Inc.*, 62 F.3d 1217, 1219 (9th Cir. 1995)). "Once the protective order has been entered, a party seeking to modify the protective order carries the initial burden of showing 'good cause.'" *Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*, 2011 WL 2516224, at *1 (E.D. Cal. June 22, 2011).

Allowing Mr. Moen to review non-public information in this case gives Docklight an unfair advantage and constitutes good cause for modifying the protective order. *Housler v. First Nat. Bank of East Islip*, 484 F. Supp. 1321, 1322-23 (E.D.N.Y. 1980) (maintaining a protective order preventing access to confidential discovery by party's former general counsel).

Accordingly, it is **ORDERED**:

ORDER GRANTING DEFENDANTS'
MOTION TO DISQUALIFY AND MODIFY
PROTECTIVE ORDER - 15

1) Defendants' motion to disqualify Patrick Moen (Dkt. 174) is **GRANTED**;

2) Defendants' motion to modify the Protective Order (Dkt. 174) is **GRANTED**; Mr. Moen is precluded from reviewing discovery in this case and must destroy all confidential discovery in his possession.

DATED this 16th day of August, 2023.

BRIAN A. TSUCHIDA
United States Magistrate Judge